The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Joshua M. AARNESS, Defendant–Appellant.

No. 03CA0096.

Colorado Court of Appeals, Division V.

Jan. 13, 2005.

As Modified on Denial of Rehearing March 3, 2005.

Certiorari Granted Aug. 1, 2005.

Ken Salazar, Attorney General, Karen E. Lorenz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, Joshua M. Aarness, appeals the judgment of conviction entered on a jury verdict finding him guilty of drug and weapons charges. Following the verdict, defendant pleaded guilty to habitual criminal counts. Under the plea agreement, he reserved the right to challenge the trial court's denial of his motion to suppress. We conclude the motion should have been granted, and therefore we reverse and remand for a new trial.

The police department received an anonymous telephone call that identified defendant, gave his physical description, reported he was armed, indicated he was subject to outstanding arrest warrants, and provided the address of an apartment, stating he was "at this location." After verifying the existence of the warrants, one of which involved a parole violation in another state, a police dispatcher relayed the information to several officers. Without either investigating defendant's relationship to the apartment or obtaining a search warrant, they went to the apartment.

While other officers established a perimeter, two officers knocked on the front door of the apartment with guns drawn. Defendant's brother opened the door. The officers saw a person matching defendant's description seated in a recliner.

Defendant complied with the officers' demand that he show his hands. The evidence is disputed whether the officers then entered the apartment or defendant came out in response to their commands. Three other persons also exited the apartment as commanded by the officers.

The officers searched all four persons who had been inside the apartment. They found drugs and a loaded handgun clip on defendant and found drugs on a minor female.

She said they belonged to defendant and told the officers that another person remained inside the apartment.

After receiving no response to their calls, the officers entered the apartment and located the other person, who was the tenant, in an upstairs bedroom. They found drugs on his person as well. While in the apartment, the officers observed drug paraphernalia and a handgun in plain view, but did not seize these items.

After securing the apartment, the arresting officers obtained the tenant's consent to search. Other officers then came to the scene, searched the apartment based on that consent, and seized the handgun, drugs, and drug paraphernalia. With the minor female's consent, these officers searched her car and seized a handgun that she said belonged to defendant.

Before trial, defendant moved to suppress all items seized as the fruits of an unlawful search, but did not challenge the legality of his arrest. The trial court denied the motion, finding that the officers entered the apartment after defendant "responded to their commands and showed them his hands." The court further found that "[The officers then] made other observations. And in the process, they found drugs on the various people or what are believed to be drugs, as well as a gun 5–feet [sic] from the defendant."

The court concluded that the officers were lawfully in the apartment because "they had authority to enter the home whether or not they had further probable cause to believe [defendant] was there." The court also concluded that "they had authority or they did what they call a sweep—protective sweep, and they made observations and those were justified." Although the transcript of the findings refers to the officers "executing a search warrant," both parties agree that the court intended to refer to the arrest warrants.

The court made no finding whether the apartment was defendant's residence. The evidence showed that defendant stored some personal property in the apartment, had lived in the apartment for about thirty days,

and maintained no other residence during this time. On appeal, defendant asserts, and the People do not contest, that the apartment was his residence.

The weapons, drugs, and paraphernalia seized were admitted into evidence at defendant's trial.

## I. Search and Seizure Standards

■ The Fourth Amendment to the United States Constitution and the second amendment to the Colorado Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV.; Colo. Const. amend. II, § 7. Warrantless searches of a residence are presumed to be unreasonable and unconstitutional. *People v. Syrie*, 101 P.3d 219 (Colo.2004).

■ Officers may enter a residence without a search warrant to execute an arrest warrant "when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980); *People v. Dotson*, 55 P.3d 175 (Colo.App.2002).

In *Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990), the Supreme Court said:

> We also hold that as *an incident to the arrest* the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

(Emphasis added.)

■ Evidence obtained from an unlawful search is inadmissible as the fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. Taylor*, 41 P.3d 681 (Colo. 2002). This rule prohibits introduction of such evidence, even if it was seized as the indirect result of the unlawful search, unless

the connection with the unlawful search has become so attenuated as to dissipate the taint. *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). However, the fruit of the poisonous tree doctrine does not apply when the government obtained the evidence from an independent source untainted by illegal police conduct. *People v. McFall*, 672 P.2d 534 (Colo.1983).

At a suppression hearing, the People have the burden of proving that a warrantless search falls within an exception to the warrant requirement. *People v. Syrie, supra.* The defendant must specifically articulate the alleged Fourth Amendment violation. *See Outlaw v. People*, 17 P.3d 150 (Colo.2001). In determining whether the People have met this burden, a court must examine the totality of the circumstances as they would have appeared to a "prudent and trained police officer" when deciding to conduct the warrantless search. *People v. Smith*, 40 P.3d 1287, 1290 (Colo.2002) (quoting *People v. Malczewski*, 744 P.2d 62, 66 (Colo.1987)).

In reviewing a suppression ruling, the trial court's findings of fact will not be overturned when supported by competent evidence in the record. However, the trial court's application of legal standards is reviewed de novo. *People v. Syrie, supra.*

### II. Motion to Suppress

Defendant contends the trial court erred in refusing to suppress evidence obtained as a result of an unlawful entry into the apartment. We agree.

### A. Forced or Constructive Entry

We need not resolve defendant's argument that the officers' failure to announce their presence when they knocked on the door constituted a forced entry. At the suppression hearing, defendant's witnesses testified that the police knocked on the door but failed to identify themselves. *See People v. Lujan*, 174 Colo. 554, 484 P.2d 1238 (1971). However, because defendant did not assert that this failure constituted an unlawful entry, either in his motion to suppress or at the hearing, he is precluded from raising the argument on appeal. *People v. Salyer*, 80 P.3d 831 (Colo.App.2003).

Defendant also argues that the officers' display of overwhelming force when his brother opened the door constituted a constructive entry of the apartment. Although he preserved this argument below, we are not persuaded.

Defendant cites no Colorado case, and we have found none, holding that a mere show of force by police constitutes a constructive entry. Defendant relies on inapposite federal cases where the police exhibited a greater show of force than just drawn guns. *See, e.g., United States v. Maez*, 872 F.2d 1444 (10th Cir.1989) (over fifteen SWAT officers in their black gear did not approach door and used bullhorn); *United States v. Al-Azzawy*, 784 F.2d 890 (9th Cir.1985) (similar); *United States v. Morgan*, 743 F.2d 1158 (6th Cir. 1984) (similar).

### B. Executing an Arrest Warrant in a Residence

Defendant next argues that the officers lacked probable cause or a reasonable belief that he was within the apartment and that the apartment was his residence. We agree in part.

#### 1. Applicable Standard

The *Payton* Court discussed the fact of the suspect's living in the residence entered, but did not formulate a test for warrantless entry based on that fact. Nevertheless, a majority of the federal circuit courts, including the Tenth Circuit, have added a second prong to the *Payton* analysis: "officers must have a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry." *United States v. Gay*, 240 F.3d 1222, 1226 (10th Cir.2001); *see also United States v. Lovelock*, 170 F.3d 339 (2d Cir.1999); *United States v. Route*, 104 F.3d 59 (5th Cir.1997); *United States v. Risse*, 83 F.3d 212 (8th Cir.1996); *United States v. Magluta*, 44 F.3d 1530 (11th Cir.1995); *United States v. May*, 68 F.3d 515 (D.C.Cir.1995).

Requiring the arresting officers reasonably to believe that the subject of the arrest warrant both resides in and is present

in the place they enter deters them from conducting warrantless searches of residences of third parties and protects the interests of third parties whose privacy might otherwise be intruded upon without the protection of a search warrant. *See United States v. Gorman*, 314 F.3d 1105 (9th Cir. 2002) (an arrest warrant forms the necessary, not sufficient, basis for entry into a home); *Valdez v. McPheters*, 172 F.3d 1220 (10th Cir.1999) (same); *cf. Lankford v. Gelston*, 364 F.2d 197 (4th Cir.1966) (police conducted over 300 nighttime raids on homes under the pretext of executing arrest warrants). No federal circuit has expressly rejected the two-prong reasonable belief requirement.

■ The division in *People v. Dotson*, *supra*, addressed only the necessity of a reasonable belief that the suspect was within the residence, but does not appear to have been presented with the two-prong test which has been argued to us. Regardless, we are persuaded by the weight of federal precedent applying the two-prong test and adopt it here. However, we reject defendant's assertion that the police needed probable cause that he lived in the residence.

Only two federal circuits have applied probable cause to this prong; the majority of circuits have applied a reasonable belief standard. *Compare United States v. Gorman*, *supra* (requiring probable cause); *United States v. Clifford*, 664 F.2d 1090 (8th Cir. 1981) (same), *with United States v. Gay*, *supra* (requiring reasonable belief); *United States v. Route*, *supra* (same); *United States v. Risse*, *supra* (same); *United States v. Lauter*, 57 F.3d 212 (2d Cir.1995) (same); *United States v. Magluta*, *supra* (same). The majority view is consistent with the holding in *Payton*, which requires only a reasonable belief that the suspect is within the residence.

■ We find persuasive the Tenth Circuit's rationale that requiring probable cause would impermissibly burden police in dealing with the uncertainty posed by transient and shared living arrangements. A reasonable belief standard at the time of entry allows officers greater flexibility in executing arrest warrants while still protecting both suspects'

and third parties' Fourth Amendment rights. *See Valdez v. McPheters*, *supra*. Hence, we adopt a reasonable belief standard for both prongs of the *Payton* test.

### 2. Defendant's Presence

■ Defendant next contends that, even assuming the reasonable belief standard applies, the officers lacked a reasonable belief he was within the apartment when they entered. We disagree.

■ We have previously concluded the officers had not effected a constructive entry when they observed a person fitting defendant's description inside the apartment as soon as the door was opened. Police may constitutionally knock on the door of a residence for the purpose of investigation. *People v. Milton*, 826 P.2d 1282 (Colo.1992). Hence, once the police saw a person matching defendant's description from their lawful vantage point, they had reason to believe defendant was within the apartment. *See People v. Chavez*, 632 P.2d 574 (Colo.1981) (probable cause may be based on personal observations of the arresting officer).

### 3. Defendant's Residence

■ Nevertheless, we agree with defendant that the officers did not have a reasonable belief that the apartment was his residence when they entered.

A suspect's actual residence is irrelevant because the inquiry is whether police investigated sufficiently to form a reasonable belief. *United States v. Route*, *supra*.

Using a "common sense" approach, *see Valdez v. McPheters*, *supra*, a variety of circumstances may establish a reasonable belief that the place entered is the suspect's residence. *See, e.g., Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921 (9th Cir.2001) (initial conversation with suspect was consistent with conclusion that she was a resident); *United States v. Clayton*, 210 F.3d 841 (8th Cir.2000) (anonymous tip supported by independent verification of suspect's address); *United States v. Manley*, 632 F.2d 978 (2d Cir.1980) (neighbor identified suspect in photograph as resident).

Here, because the trial court rejected defendant's argument that a search warrant was ever necessary to execute an arrest warrant, it made no finding whether the officers had a reasonable belief that defendant resided at the apartment. However, undisputed evidence in the record enables us to resolve this question without a remand. *See, e.g., People v. Dracon,* 884 P.2d 712 (Colo.1994) (evidence in record only supported one legal conclusion).

The anonymous tip stated that defendant was "at this location" and gave the apartment's address. The officers did not investigate whether defendant was a resident of the apartment before they entered. According to the officer who testified for the People at the suppression hearing, they "had no information as to the likelihood of [defendant] staying in [the apartment]."

Therefore, the record affords no basis for concluding that the officers reasonably believed the apartment was defendant's residence, as opposed to being merely a location where he might be found.

### C. Executing an Arrest Warrant in a Residence Without a Search Warrant Based on Plain View

■ We have concluded the officers lacked a reasonable belief that the apartment was defendant's residence, and the People acknowledge that they did not have a search warrant. Therefore, we next consider whether their entry is within an exception to the warrant requirement.

In the trial court and on appeal, the People respond to defendant's lack of a search warrant argument only on the basis that the officers entered the apartment lawfully because they had valid arrest warrants and defendant was in plain view through the open door. Despite the out-of-state warrant for parole violation and testimony that the officers smelled burned marijuana and saw drug paraphernalia before entering the apartment, the People did not argue below, and the trial court did not find, that exigent circumstances justified the initial warrantless entry. *See People v. Pate,* 71 P.3d 1005 (Colo.2003) (listing categories of exigent circumstances). Nor do the People argue exigent circum-

stances on appeal. *Cf. People v. Litchfield,* 918 P.2d 1099 (Colo.1996) (scope of search unreasonable because prosecution did not argue officer had probable cause).

Therefore, we address plain view. We conclude the officers acted unlawfully because they did not have a search warrant to enter the apartment to execute the arrest warrants, although they could see defendant within the apartment.

Plain view is not sufficient in itself to justify warrantless entry into a residence. *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *People v. O'Hearn,* 931 P.2d 1168 (Colo.1997); *see also* 3 Wayne R. LaFave, *Search and Seizure* § 2.2(a) (1996). Thus, officers may seize incriminating evidence discovered in plain view only if they are lawfully on the premises. *People v. Dotson, supra.*

Accordingly, we conclude the People have not met their burden to prove the officers' initial warrantless entry into the apartment was within an exception to the warrant requirement.

### D. Protective Sweep

■ Defendant next argues that the officers lacked sufficient justification to conduct a "protective sweep" of the apartment after his arrest. A protective sweep of a residence must be done incident to a lawful arrest. *See Maryland v. Buie, supra.* Thus, having concluded that their entry into the apartment without a search warrant to effect defendant's arrest was unlawful, we need not decide whether officer safety concerns may have justified the subsequent protective sweep.

### E. Fruit of the Poisonous Tree

■ Defendant further argues that all physical evidence seized from his person, from the other occupants, and from the apartment should have been suppressed as fruit of the poisonous tree. We agree.

In the trial court and on appeal, the People do not contend they had a source indepen-

dent of the unlawful entry, nor did they rely on any exception—such as the tenant's or the minor female's consent, attenuation, or inevitable discovery—to the fruit of the poisonous tree doctrine. *See, e.g., People v. Medina,* 25 P.3d 1216 (Colo.2001).

We have concluded the officers' initial entry into the apartment to execute the arrest warrants was unlawful. Therefore, absent an independent source or attenuation, any evidence seized as a result of the initial unlawful entry arrest must be suppressed. *See People v. O'Hearn, supra; People v. Traubert,* 199 Colo. 322, 608 P.2d 342 (1980).

Accordingly, we further conclude the trial court erred in not suppressing all physical evidence seized from defendant, the other occupants, and the apartment, as the fruit of the unlawful entry. We express no opinion on the admissibility of post-arrest statements made to police by defendant and other occupants. *See New York v. Harris,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1990).

### III. Use Immunity

Because the issue could arise on retrial, we consider but reject defendant's contention that he was denied his constitutional right to present a defense because the trial court refused to grant use immunity to a defense witness.

Section 13–90–118, C.R.S.2004, allows the People to offer use immunity to witnesses who would otherwise refuse to testify based on their privilege against self-incrimination. The decision to offer use immunity is vested solely in a "district attorney, attorney general, or special prosecutor." Section 13–90–118(3), C.R.S.2004. The People have considerable discretion in deciding when to request use immunity for a witness. *People v. Russom,* 107 P.3d 986, 2004 WL 1469369 (Colo. App. No. 02CA1920, July 1, 2004). And the trial court has no authority to grant a defendant's request for use immunity. *People v. Eggert,* 923 P.2d 230 (Colo.App.1995).

Here, the People granted use immunity to the minor female, who testified against defendant. Defendant asked the People to grant similar immunity to another occupant of the apartment, who defendant contended would give exculpatory testimony. The People refused.

Defendant then called the occupant as a witness, who asserted his Fifth Amendment rights outside the presence of the jury. Defendant asked the trial court to grant use immunity. The court declined to do so, but found that defendant was prejudiced by the witness's refusal to testify.

Defendant argues that exclusive prosecutorial power over use immunity undermines the fundamental fairness of a defendant's trial, relying on *Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir.1980). However, this rationale was explicitly rejected in *Harding v. People,* 708 P.2d 1354 (Colo.1985), which is controlling.

Accordingly, we perceive no error in the trial court's refusal to grant use immunity.

The judgment of conviction is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge DAILEY and Judge CARPARELLI concur.