150 P.3d 1271
The PEOPLE of the State of Colorado, Petitioner
v.
Joshua M. AARNESS, Respondent.
No. 05SC237.
Supreme Court of Colorado, En Banc.
October 23, 2006.
As Modified on Denial of Rehearing January 16, 2007.

 John W. Suthers, Attorney General, Katherine A. Hansen, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Petitioner.
 David S. Kaplan, Colorado State Public Defender, Ned R. Jaeckle, Denver, Colorado, Attorneys for Respondent.
 Justice BENDER delivered the Opinion of the Court.
I. Introduction
 In this appeal, we review and reverse People v. Aarness, 116 P.3d 1233 (Colo.App. 2005), in which the court of appeals held that the trial court erroneously denied defendant Joshua M. Aarness's motion to suppress evidence. While we agree with the court of appeals' application of the two-pronged standard articulated in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which determines when police may enter a home seeking to arrest the subject of an arrest warrant, we hold that the existence of exigent circumstances constitutes an independent basis justifying police entry into the residence to arrest Aarness.
 Before his trial, Aarness moved to suppress all of the evidence seized as fruits of an unlawful search, arguing that the police entered and searched his home in violation of his rights under the Fourth Amendment to the United States Constitution, and article II, section 7 of the Colorado Constitution. The trial court denied the motion.
 On appeal, Aarness argued that the police unlawfully entered his dwelling under the standard established by the United States Supreme Court in Payton. The court of appeals agreed, adhering to the two-pronged Payton standard: before entering a residence to execute an arrest warrant, the police must have a reasonable belief that the arrestee both (1) lives in the residence, and (2) is within the residence at the time of entry. Aarness, 116 P.3d at 1237. The court of appeals held that the police entry violated the first prong of the Payton standard because the police had no information that Aarness lived in the apartment where they arrested him. Id. at 1239.
 The court of appeals also held that no exception to the warrant requirement applied to justify the entry. Id. The court found the plain view and protective sweep doctrines inapplicable because the police were not lawfully on the premises, and declined to address whether exigent circumstances justified the entry because the People did not raise the issue below. Id.
 The court of appeals concluded that any evidence seized as a result of the unlawful entry must be suppressed and reversed Aarness's convictions. Id. at 1240. The People appealed and we granted certiorari.
 Here, we choose to follow the two-pronged Payton standard, and hold that the Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution require police to meet two requirements before entering a residence to execute an arrest warrant: (1) police must have a reasonable belief that the suspect lives in the residence, and (2) police must have a reasonable belief that the suspect is within the residence when they enter. The Payton standard does not apply where exigent circumstances exist as an independent basis to justify entry into a home. See Payton, 445 U.S. at 583, 100 S.Ct. 1371 (recognizing that exigent circumstances may justify warrantless entry into a residence to make an arrest); 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 6.1(f) (4th ed.2004) (same).
 Although the two-pronged Payton test was not satisfied in this case, exigent circumstances constituted an independent basis to justify police entry. Thus, the entry and subsequent search were constitutional and the trial court's denial of Aarness's motion to suppress evidence was proper even though the Payton standard was not satisfied. Hence, we hold that Aarness's motion to suppress was properly denied by the trial court, and we reverse the court of appeals' judgment and remand this case to the court of appeals to be returned to the trial court to reinstate Aarness's convictions.
II. Facts and Proceedings Below
 Police received an anonymous tip that Aarness had arrest warrants outstanding. The tip also gave Aarness's physical description as being about six feet tall and 180 pounds with red hair and green eyes, reported he was armed with a loaded .38 caliber handgun, and provided the address of an apartment where he was located. Police verified the existence of the outstanding arrest warrants, one of which involved a parole violation in California, before going to the named apartment, but neither investigated whether Aarness lived at the apartment nor obtained a search warrant for the premises.
 Six police officers went to the named apartment and three of them knocked on the door with their guns drawn. When Aarness's brother opened the door, the officers immediately recognized Aarness from his description, sitting in a recliner. Because Aarness had shoved his hand between the recliner's cushion and armrest, the officers yelled at him, "Show us your hands." The police testified that from their position outside the front door Aarness appeared nervous and excited and seemed to be in a "fight or flight mood."
 The police pulled the brother out of the apartment by his shirt and ordered two other individuals out of the apartment because they were concerned for the safety of those present. By the time the other occupants had vacated the apartment, Aarness still had not complied with police orders to raise his hands.
 A few seconds later, Aarness put his hands up. The trial court found that the police then entered the apartment to arrest Aarness. The police searched all four persons and found drugs and a loaded handgun clip on Aarness and drugs on another person. One of the occupants informed police that another person remained in the apartment. After receiving no response to their calls and detecting the smell of burned marijuana emanating from the apartment, police again entered the apartment and located the other person, a tenant, in an upstairs bedroom. They found drugs on his person. While in the apartment, police observed drug paraphernalia and a handgun in plain view, but did not seize these items at that time.
 The police secured the apartment and received the tenant's consent to search. Police then searched the apartment and seized drugs, the handgun, and drug paraphernalia. With consent, police also searched an occupant's car and seized a handgun which the occupant said belonged to Aarness.
 Aarness was charged with drug and weapons violations. Before trial, he moved to suppress all of the items seized as the fruits of an unlawful search. The trial court ruled that the police actions were lawful because the police were executing an arrest warrant.1 The court reasoned that although police lacked a search warrant, the arrest warrant provided them with the legal authority to enter the apartment and execute the arrest. The trial court thus denied Aarness's motion to suppress and admitted the seized weapons, drugs, and drug paraphernalia into evidence at Aarness's trial.
 Aarness appealed his convictions to the court of appeals, arguing that the trial court erred when it denied his motion to suppress because the police did not have a reasonable belief that he lived at the apartment. The court of appeals agreed, applying the United States Supreme Court's holding in Payton, 445 U.S. 573, 100 S.Ct. 1371, as interpreted by a majority of federal circuit courts. Aarness, 116 P.3d at 1237. Implementing the two-pronged Payton standard, the court held that before entering a dwelling to execute an arrest warrant, police must have a reasonable belief both that the suspect lives in the dwelling and that he is then present within. Id. Because the police had no information that Aarness lived in the apartment, the court of appeals held their entry unlawful pursuant to Payton. Id. at 1238. The court held all of the evidence inadmissible pursuant to the fruit of the poisonous tree doctrine because it was seized as a direct result of the unlawful entry. Id. at 1239-40. Thus, the court of appeals reversed Aarness's conviction and remanded to the trial court for further proceedings. Id. at 1240.
 We granted certiorari on the question of whether the court of appeals erred in concluding that the police entry into Aarness's home was unlawful under Payton.2 The People argue that when the police are executing an arrest warrant in a residence, Payton requires only that they have a reasonable belief that the subject of an arrest warrant is in the residence, not that the arrestee lives there. Aarness argues that the court of appeals correctly interpreted Payton to include two reasonable belief prongs.
 To determine whether Aarness's constitutional rights were violated, we interpret Payton's requirements regarding entry of a residence to execute an arrest warrant. We begin with the constitutional prohibition of unreasonable searches and seizures.
III. Analysis
 The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution proscribe all unreasonable searches and seizures. Searches and seizures inside a home without a warrant are presumptively unreasonable unless justified by one of the well-established exceptions to the Warrant Clause of the Fourth Amendment. Payton, 445 U.S. at 586, 100 S.Ct. 1371; People v. Hebert, 46 P.3d 473, 478 (Colo.2002).
 In Payton, the United States Supreme Court established the constitutional standard for police entry into a residence to execute an arrest warrant. 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. The Court concluded that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the
suspect lives when there is reason to believe the suspect is within." Id. at 603, 100 S.Ct. 1371.
 A majority of federal circuit courts, including the Tenth Circuit, have interpreted the Payton standard as containing two prongs: police must have reason to believe3 that the suspect (1) lives in the residence, and (2) is within the residence at the time of entry. E.g., United States v. Veal, 453 F.3d 164, 167 (3d Cir.2006); United States v. Gay, 240 F.3d 1222, 1226 (10th Cir.2001); United States v. Lovelock, 170 F.3d 339, 343 (2d Cir.1999); United States v. Route, 104 F.3d 59, 62 (5th Cir.1997); United States v. Risse, 83 F.3d 212, 216 (8th Cir.1996); United States v. Magluta, 44 F.3d 1530, 1533 (11th Cir.1995); United States v. May, 68 F.3d 515, 516 (D.C.Cir.1995). No federal circuit court has expressly rejected this two-pronged Payton standard.
 We follow the majority of jurisdictions and hold that police may enter a residence to execute an arrest warrant only when they have reasonable belief that the subject of the arrest warrant both (1) lives at the residence, and (2) is within the residence at the time of entry.
 Several considerations support this two-pronged analysis. First, this standard is consistent with Colorado and federal Fourth Amendment jurisprudence regarding the reasonableness of police entry without a search warrant. Both the U.S. Supreme Court and this Court look to what the police knew at the time of entry, not to facts that later became apparent. United States v. Banks, 540 U.S. 31, 37, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003) (holding that whether police had a reasonable suspicion of exigent circumstances is "revealed by the circumstances known to the officers" at the time of entry); United States v. Ramirez, 523 U.S. 65, 71 n. 2, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998) (holding that the lawfulness of entry and existence of probable cause concerns only what the officers had reason to believe at the time of their entry); People v. Pate, 71 P.3d 1005, 1010 (Colo.2003) (holding that courts must examine the totality of circumstances as they would have appeared to the police officer at the time the decision to conduct a warrantless entry was made, to determine whether an exception to the warrant requirement is met). It follows that police must have a reasonable belief that the suspect lives at the residence at the time of entry and cannot rely on facts that become apparent after the entry to justify their incursion into a private residence.
 Second, the two-pronged requirement satisfies the policy goals underlying Fourth Amendment search and seizure jurisprudence. As the court of appeals noted, requiring police to have a reasonable belief both that the subject of the arrest warrant lives at the residence and that he is present deters warrantless searches of residences of third parties. Aarness, 116 P.3d at 1237-38. These requirements are also consistent with the Supreme Court's holding in Steagald v. United States, 451 U.S. 204, 205-06, 216, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), requiring a search warrant to execute an arrest in a third party's residence to protect the Fourth Amendment rights of the third party.
 Having approved of the two-pronged Payton analysis requiring police to have reasonable belief that the arrestee both (1) lives in the residence, and (2) is within the residence at the time of entry, we turn to the facts of this case.
A. Application of the Payton Standard
 We agree with the court of appeals that the police violated the Payton standard in this case. Even if the anonymous tip gave the police reason to believe that Aarness was
at the apartment at the time of entry, as discussed by the court of appeals below, the police had no reason to believe that Aarness lived at that address because it is undisputed that they had no information regarding whether Aarness lived there before executing the arrest warrant. Hence, the arrest warrant does not provide authority for police entry.
 Although the facts here do not satisfy Payton, we conclude that exigent circumstances constituted an independent basis to justify police entry into the home to arrest Aarness.
B. Exigent Circumstances
1. The Issue of Exigent Circumstances is Properly Before This Court
 The Payton reasonable belief standard applies unless police entry is otherwise justified by exigent circumstances. See Payton, 445 U.S. at 583, 100 S.Ct. 1371 (recognizing that exigent circumstances may justify warrantless entry into a residence to make an arrest); 3 LaFave, supra, § 6.1(f) (same). Because exigent circumstances are an exception to the Payton standard, the doctrine is so inextricably intertwined with the Payton analysis for which we granted certiorari that the issue of exigent circumstances is properly before this Court. Even though the parties did not argue4 nor did the courts below decide the issue, the People briefed the issue to this Court and we find the doctrine of exigent circumstances determinative in this case.
 On appeal, a party may defend the trial court's judgment on any ground supported by the record, whether relied upon or even considered by the trial court. People v. Eppens, 979 P.2d 14, 22 (Colo.1999). This Court has discretion to affirm the trial court's denial of Aarness's motion to suppress on different grounds than those relied upon by the trial court. See, e.g. People v. May, 859 P.2d 879, 882 (Colo.1993) (affirming the trial court's suppression ruling on different grounds); People v. Martinez, 32 P.3d 520, 525-26 (Colo.App.2001) (same), abrogated on other grounds by People v. Johnson, 121 P.3d 285 (Colo.App.2005). We choose to exercise that discretion here. While we recognize that the prosecution generally has the burden to prove the presence of exigent circumstances, Pate, 71 P.3d at 1010, we hold that exigent circumstances were present in this case as a matter of law based on the undisputed facts in the record.
2. Exigent Circumstances Are Present in This Case
 A warrantless search or seizure is unreasonable and thereby unconstitutional unless justified by an established exception to the Warrant Clause of the Fourth Amendment. People v. Kluhsman, 980 P.2d 529, 534 (Colo.1999). Exigent circumstances that necessitate immediate police action are one such exception. Id. To meet the requirements of the exigent circumstances doctrine, police must have probable cause to believe that the residence contains contraband or evidence of criminal activity, and exigent circumstances must justify a warrantless entry. Pate, 71 P.3d at 1010. Here, probable cause is not at issue because the police had an arrest warrant for Aarness which was based on probable cause. Thus, we turn to the issue of exigent circumstances.
 We have recognized three situations in which exigent circumstances justify a warrantless search: (1) the police are engaged in a "hot pursuit" of a fleeing suspect; (2) there is a risk of immediate destruction of evidence; or (3) there is a colorable claim of emergency threatening the life or safety of another. Kluhsman, 980 P.2d at 534. The scope of the permissible intrusion is determined by the exigency justifying the initiation of the warrantless entry. Id.
 The People argue two possible exigencies in this case—a risk of immediate destruction
of evidence and the safety of officers and other occupants. We address each position in turn.
Risk of Immediate Destruction of Evidence
 To establish that there was a risk of immediate destruction of evidence, the police must have an articulable basis upon which to justify a reasonable belief that evidence is about to be destroyed. Mendez v. People, 986 P.2d 275, 282 (Colo.1999). The question is whether there is a substantial likelihood that contraband or evidence might be removed or destroyed before a warrant could be obtained. Id. The perceived danger must be real and immediate, and the mere fact that the evidence is of a type that can be easily destroyed does not, in itself, constitute an exigent circumstance. Id.
 In Mendez, we held that there was a sufficient risk of immediate destruction of evidence to rise to the level of exigent circumstances where an officer investigating an outstanding arrest warrant "smelled the distinct odor of burning marijuana emanating from [the defendant's] room." Id. We reasoned that "[t]his odor indicated that evidence of a crime, that is, possession of marijuana, was in the process of being burned and thereby destroyed." Id. We thus concluded that these exigent circumstances justified entry into the defendant's motel room, such that the seizure of evidence found in plain view in the room was proper. Id. at 283.
 In this case, the police testified that they smelled burned marijuana from their position at the front door after Aarness and the three other occupants were removed from the first floor of the apartment, and after they had learned that there may be another person sleeping upstairs. At this point in time, the smell of burned marijuana did not indicate any risk that evidence was being destroyed because all of the occupants were already outside, except for one other person upstairs asleep. Thus, the facts of this case are clearly distinguishable from those in Mendez, and the smell of burned marijuana did not present exigent circumstances justifying police entry.
Safety of Officers and Other Occupants
 The People argue that the officers' warrantless entry into the apartment was justified to protect the safety of the officers and other occupants present at the time of Aarness's arrest. We agree. The police had information that Aarness was armed and observed him reach into the seat of his recliner—possibly for a weapon—and Aarness refused to show his hands when ordered to do so. Therefore, we hold that the police were justified in making a warrantless entry to arrest Aarness.
 This type of exigency does not fit neatly within the three categories we have recognized in the past. Although it is related to the colorable claim of emergency category, the facts of this case do not present a colorable claim of emergency as we have defined it. To establish that there was a colorable claim of emergency threatening the life or safety of another, also known as the "emergency aid exception," there must be a showing of immediate crisis inside the home and the probability that police assistance will be helpful in alleviating that crisis. People v. Winpigler, 8 P.3d 439, 446 (Colo.1999). The typical case is one in which the police are responding to an ongoing emergency inside a residence. E.g., Kluhsman, 980 P.2d at 532-33 (finding a colorable claim of emergency where the defendant, covered in blood, told police that people had been chasing him all night and that he had killed a couple of his pursuers, such that a warrantless search of the defendant's home for injured persons was justified). Thus, there was no colorable claim of emergency here.
 We have not decided a case with facts substantially similar to those in the case at hand. The United States Supreme Court, however, has held that officers may make a warrantless arrest or conduct a warrantless search if they believe that their own lives or the lives of others are at risk. See Warden
v. Hayden, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (holding the warrantless entry and search of a residence lawful where police had information that an armed robbery suspect was inside). We find this overarching principle helpful in guiding our analysis of whether the facts here present exigent circumstances.
 In addition to the three specific categories of exigent circumstances we have recognized, we have developed a set of factors to be considered when determining whether exigent circumstances are present. People v. Miller, 773 P.2d 1053, 1057 (Colo.1989) (citing Dorman v. United States, 435 F.2d 385, 392-93 (D.C.Cir.1970)). In Miller, we followed the Dorman factors for determining whether exigent circumstances exist: (1) whether a grave offense is involved, particularly a crime of violence; (2) whether the suspect is reasonably believed to be armed; (3) whether there exists a clear showing of probable cause to believe that the suspect committed the crime; (4) whether there is a strong reason to believe the suspect is in the premises being entered; (5) the likelihood that the suspect will escape if not swiftly apprehended; and (6) whether the entry is made peaceably. Id. Whether the entry is made at night is an additional consideration. Id.
 Applying the Dorman factors, other jurisdictions have found exigent circumstances in situations substantially similar to this one. See generally 3 LaFave, supra, § 6.1(f) nn. 198-206 (listing cases finding exigent circumstances under the Dorman factors).5 For example, the First Circuit held that exigent circumstances justified entry into a third party's residence to execute an arrest warrant where the arrestee had outstanding arrest warrants, had been seen by an informant earlier that day carrying a firearm, and tried to escape through the attic when he saw police outside the residence where he was staying. United States v. Weems, 322 F.3d 18, 20-21, 23 (1st Cir.2003). The court reasoned that the police needed to act quickly in that situation, and that the arrestee had been given ample time to surrender before the police entered the residence to arrest him. Id. at 23.
 Considering the Dorman factors as approved of by this Court in Miller, the particular circumstances present here were sufficient to conclude that there existed a substantial safety risk to both police and the occupants of the apartment that justified police entry to arrest Aarness.
 Aarness argues that exigent circumstances do not excuse a warrantless entry when they arise as a result of a planned confrontation initiated by the police. Essentially, Aarness asserts that the police created the exigency that they used to justify their warrantless entry. See, e.g., United States v. Anderson, 154 F.3d 1225, 1234 (10th Cir. 1998) (holding that exigent circumstances that the police knowingly created cannot justify their warrantless entry).
 Here, the police had just learned from an anonymous tip that an armed parole violator with two outstanding warrants, one from Mesa County and the other for violating parole in California, was located in the apartment. When the police knocked on the door with their weapons drawn and saw Aarness through the open doorway, they created the encounter with Aarness. But it was Aarness's action and failure to respond to police commands to show his hands that created the circumstances that justified police entry, when combined with the police's knowledge that he was an armed felon with outstanding arrest warrants. When Aarness disobeyed multiple police demands to show his hands and reached his right hand into the seat of the recliner, the need for police action arose
to protect themselves and the other occupants of the apartment. It was reasonable for police to believe that he was reaching for a weapon. Aarness's conduct, and not that of the police, created the exigent circumstances that justified the warrantless entry. Hence, we conclude that in this case police neither created nor manufactured the circumstances that justified their warrantless entry.
C. Plain View and Protective Sweep
 Because the initial police entry into the apartment was lawful, the gun, drugs, and drug paraphernalia seen by police once inside were properly seized pursuant to the plain view doctrine. Kluhsman, 980 P.2d at 534-35.
 Alternatively, police were justified in conducting a "protective sweep" of the residence incident to Aarness's lawful arrest. Maryland v. Buie, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Under this doctrine, police may conduct a protective sweep if they have an articulable suspicion that the area to be swept harbors a person posing a danger to those present at the arrest scene. Id. In this case, the police had an articulable suspicion that another occupant remained inside the house because they were told someone was upstairs. Police also had reason to believe that there may have been weapons in the apartment because they had found a loaded handgun clip on Aarness's person. The gun, drugs, and drug paraphernalia the police encountered during their protective sweep for the person upstairs were therefore properly seized.
IV. Conclusion
 While we agree with the court of appeals' application of the Payton two-pronged reasonable belief standard, we hold that exigent circumstances justified the police entry into the apartment to arrest Aarness even though the Payton standard was not met. We therefore reverse the court of appeals' judgment and remand this case to the court of appeals to be returned to the trial court to reinstate Aarness's convictions.
 Justice EID does not participate.
1. Although the trial court stated the police were executing a "search" warrant, the parties agree that this was a misstatement and the court intended to say "arrest" warrant.
2. We granted certiorari on the following question:
 Whether the court of appeals erred in concluding that the police officers' entry into the respondent's home was unlawful under Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
3. Two federal circuit courts have equated "reason to believe" with probable cause. See United States v. Gorman, 314 F.3d 1105, 1114-15 (9th Cir.2002); United States v. Clifford, 664 F.2d 1090, 1092-93 (8th Cir.1981). Additionally, the Third Circuit declined to decide whether probable cause is required, holding instead that probable cause was present in that case such that it "need not determine whether a possibly lower standard of reasonable belief should be applied here." United States v. Veal, 453 F.3d 164, 167 n. 3 (3d Cir.2006).
4. Although their brief to the court of appeals did not address the issue, in their petition for rehearing the People argued that exigent circumstances were present.
5. E.g., United States v. Wicks, 995 F.2d 964, 971 (10th Cir.1993) (holding that exigent circumstances justified the warrantless entry of a drug trafficking suspect's motel room where the police had information that the suspect was sometimes armed and that he might be planning to flee soon); cf. Loria v. Gorman, 306 F.3d 1271, 1285 (2d Cir.2002) (holding that exigent circumstances were not present where there was no indication that there were weapons at the scene of the arrest).