23CA1143 Peo v Saltzman 07-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1143
Douglas County District Court No. 20CR556
Honorable Patricia D. Herron, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brian Philip Saltzman,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Yun and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

---

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Springer and Steinberg, P.C., Harvey A. Steinberg, Taylor Ivy, Denver,
Colorado, for Defendant-Appellant

¶ 1     Defendant, Brian Philip Saltzman, appeals the judgment of conviction entered upon a jury verdict finding him guilty of one count of third degree assault (criminal negligence), two counts of prohibited use of a weapon (under the influence), and one count of reckless endangerment.  He contends that the trial court erred by denying his motion to suppress the fruits of an unconstitutional protective sweep of his residence.  We affirm.

## I.     Background

¶ 2     On May 25, 2020, Saltzman, a detective and firearms instructor with the Palmer Lake Police Department, invited some colleagues to a party at his home.  Shortly after midnight, while Saltzman and his guests were drinking alcohol and sitting around a firepit outside, Saltzman took out a gun from his waistband and, without checking where the gun was pointed, fired the gun behind him.  The bullet struck the victim — a party guest — in the leg as she was coming out of the patio door.

¶ 3     Police received a call about the shooting and, about thirty-five minutes after the first officer arrived, conducted a protective sweep of Saltzman's three-story home.  The four-page affidavit filed to

1

establish probable cause for a search warrant for the home included officers' observations during the protective sweep:

> A protective sweep of the residence found a gun room and a closet in the basement filled with firearms and ammunition. There was a bar area in the basement. There were multiple bottles of alcohol and beer throughout the basement. A gun and holster with a Palmer Lake PD badge were on the bar counter. There was blood and multiple shell casings in the grassy area just off the basement patio area.

¶ 4    When executing the search warrant, officers seized multiple items from Saltzman's home, including the gun (a Colt 1911) that Saltzman had used to shoot the victim. And, when taking Saltzman into custody, officers conducted a pat-down search and collected another firearm (a revolver) on his person.

¶ 5    The People charged Saltzman with second degree assault – recklessly causing serious bodily injury, prohibited use of a weapon (the Colt 1911), prohibited use of a weapon (the revolver), and reckless endangerment.

¶ 6    Before his trial, Saltzman filed a motion to suppress the fruits of the protective sweep, contending that the sweep "failed to comply with the exceptions outlined as permissible by the United States Supreme Court in *Maryland v. Buie*[, 494 U.S. 325 (1990)]." He

2

asserted that "all fruits, including those used in obtaining a search warrant of [his] home, should be suppressed."

¶ 7     At the conclusion of a three-day motions hearing, defense counsel clarified that the fruits of the illegal protective sweep that should be suppressed were the search warrant and the evidence seized during its execution.  Counsel stated that "the essence of [his] argument" was that, "if you redact the information contained in the affidavit in support of the search [warrant] that was gathered as a result of the safety check[,] . . . there's clearly not probable cause for the search of the premises — and all the fruits that are seized during the [search] warrant must be suppressed."

¶ 8     In response, the prosecutor argued that, even if the information collected during the protective sweep was removed from the affidavit, sufficient probable cause otherwise existed to secure the search warrant because "the firearm recovered on [Saltzman] was not the firearm that caused the injury to the victim; meaning, the firearm [used in the shooting wa]s likely somewhere in that home, [and] that there were clearly other people in that home who could have also been the shooter."

¶ 9    In a written order, the trial court denied the motion to suppress, concluding that the prosecution satisfied its burden of establishing that the protective sweep was reasonable. Specifically, the court found that (1) the officers couldn't account for "numerous additional individuals [who] were at the residence [as evidenced by] the number of vehicles and the amount of food and alcohol"; (2) the officers didn't "know[] who the shooter was"; (3) "[t]he firearm used had not been located"; and (4) "there were several firearms in plain view in vehicles outside the residence as well as other firearms which were seen in the basement as Deputies passed through to get to the victim and [Saltzman]." The court also found that the first responding officer "did not conduct a protective sweep or clear the residence" before the challenged protective sweep.

¶ 10    At trial, the Colt 1911 that was seized pursuant to the search warrant was admitted into evidence, and there was testimony that it was the weapon that had been used to shoot the victim. Saltzman's theory of defense was that he wasn't guilty of second degree assault or reckless endangerment because he didn't act recklessly and the victim didn't suffer serious bodily injury. Instead, he conceded that he was guilty of the lesser offense of third degree assault because

he acted with criminal negligence and the victim suffered bodily injury. Saltzman also admitted that he was guilty of the prohibited use of a weapon charges. The jury found Saltzman guilty of third degree assault (criminal negligence), the two prohibited use of a weapon (under the influence) counts, and reckless endangerment.

## II. Standards of Review and Reversal

¶ 11 "Our review of a trial court's order addressing a defendant's motion to suppress involves 'a mixed question of law and fact.'" *People v. Threlkel*, 2019 CO 18, ¶ 15 (quoting *People v. Gothard*, 185 P.3d 180, 183 (Colo. 2008)). We review "the trial court's legal conclusions" de novo but "defer to the trial court's factual findings and do not disturb them 'if they are supported by competent evidence in the record.'" *Id.* (citations omitted).

¶ 12 We review preserved errors "of constitutional dimension . . . for constitutional harmless error." *Hagos v. People*, 2012 CO 63, ¶ 11. We must reverse errors of constitutional dimension "unless [we are] 'able to declare a belief that [the error] was harmless beyond a reasonable doubt.'" *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). "In other words, we reverse if 'there is a reasonable

*possibility* that the [error] might have contributed to the conviction.'" *Id.* (quoting *Chapman*, 386 U.S. at 24).

¶ 13    Further, we review unpreserved errors, "constitutional and nonconstitutional, . . . for plain error." *Id.* at ¶ 14.  "[P]lain error occurs when there is (1) an error, (2) that is obvious, and (3) that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Phillips v. People*, 2019 CO 72, ¶ 39 (citing Crim. P. 52(b)).  To constitute plain error, "an error must 'be so obvious' at the time it is made 'that a trial judge should be able to avoid it without the benefit of an objection.'"  *Cardman v. People*, 2019 CO 73, ¶ 34 (quoting *Scott v. People*, 2017 CO 16, ¶ 16, *abrogated on other grounds by Whiteaker v. People*, 2024 CO 25, ¶ 25); *see also People v. Crabtree*, 2024 CO 40M, ¶ 42.  "For an error to be this obvious, the action challenged on appeal ordinarily 'must contravene (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law.'"  *Scott*, ¶ 16 (quoting *People v. Pollard*, 2013 COA 31M, ¶ 40).

## III.    Legal Authority

¶ 14    The United States and Colorado Constitutions protect individuals from unreasonable searches and seizures.  U.S. Const. amend. IV; Colo. Const. art. II, § 7; *People v. Furness*, 2025 CO 16, ¶ 16.

¶ 15    "A search conducted pursuant to a warrant is typically reasonable."  *People v. Coke*, 2020 CO 28, ¶ 34.  "[A] search warrant may only be issued upon a showing of probable cause, supported by oath or affirmation, particularly describing the place to be searched and the things to be seized."  *People v. Kerst*, 181 P.3d 1167, 1171 (Colo. 2008).  "Probable cause exists when an affidavit for a search warrant alleges sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched."  *People v. Miller*, 75 P.3d 1108, 1112 (Colo. 2003).  When moving to suppress evidence seized during the execution of a search warrant, the defendant bears the burden of showing that "[t]here was not probable cause for believing the existence of the grounds on which the warrant was issued."  Crim. P. 41(e)(4); *People v. Morehead*, 2019 CO 48, ¶ 12; *see also People v. Cunningham*, 2013 CO 71,

¶ 10 ("A motion to suppress under Crim. P. 41(e) is a claim that [a] defendant's Fourth Amendment rights have been violated.").

¶ 16    A search conducted without a warrant is presumptively unreasonable. *People v. Ramos,* 2022 CO 16, ¶ 6. To overcome this presumption, the prosecution has the burden of establishing an exception to the warrant requirement. *Id.; People v. Fuerst,* 2013 CO 28, ¶ 11. One such exception is a protective sweep. *See Buie,* 494 U.S. at 334-35. In *Buie,* the Supreme Court explained that a protective sweep is conducted for the protection of arresting officers and is limited to "a cursory inspection of those spaces where a person may be found" and may "last[] no longer than is necessary to dispel the reasonable suspicion of danger." *Id.* at 335-36.

IV.    Motion to Suppress the Fruits of the Protective Sweep

¶ 17    Saltzman contends that the trial court erred in denying his motion to suppress the fruits of the protective sweep because the court misapprehended the law and its findings aren't supported by the record. He argues that this error wasn't harmless beyond a reasonable doubt because the fruits of the protective sweep were included in the affidavit in support of probable cause for a search warrant and the execution of that search warrant led to the seizure

of the Colt 1911, which was critical evidence in the prosecution's case at trial.

¶ 18     Saltzman is correct that "police can not [sic] use information obtained solely by unconstitutional means to supply probable cause to support a search warrant." *People v. Hebert*, 46 P.3d 473, 481 (Colo. 2002). But "[w]here an affidavit includes illegally obtained evidence as well as evidence derived from independent and lawful sources, a valid search warrant may issue if the lawfully obtained evidence, considered by itself, establishes probable cause to issue the warrant." *People v. McFall*, 672 P.2d 534, 537 n.4 (Colo. 1983); *see also People v. Pahl*, 169 P.3d 169, 175 (Colo. App. 2006) ("Where an affidavit includes information obtained unlawfully from a previous warrantless search as well as information from lawful origins, evidence discovered by execution of the search warrant is admissible if the search pursuant to the warrant was supported by information from sources independent of the unlawfully procured information.").

¶ 19     Assuming, without deciding, that the protective sweep was unconstitutional, we conclude that the error in denying the motion to suppress the fruits of the sweep was harmless beyond a

reasonable doubt because we are convinced that the other independently collected information in the affidavit, besides the information gathered during the protective sweep, was sufficient to establish probable cause to secure the search warrant. *See People v. Stock*, 2017 CO 80, ¶ 13 ("We may affirm a trial court's suppression ruling on any grounds supported by the record."); *see also Hebert*, 46 P.3d at 481 ("[D]e novo review is the proper standard for an appellate court to apply to determine whether a redacted affidavit is sufficient to establish probable cause.").

¶ 20    The affidavit included the following information that wasn't gathered during the challenged protective sweep:

- police dispatch received reports from party guests that "someone" had fired a gun, that the discharged bullet hit a person, and that "[t]he male who shot the weapon was still on scene, but it was unknown where the weapon was";

- responding officers saw multiple vehicles parked at the home and multiple firearms in plain view in those cars;

- the victim reported that, when she entered the backyard, she heard a shot, saw a muzzle flash, and felt the bullet hit her leg;

- officers observed a bloody sock, a spent round, and multiple shell casings at the scene;

- a party guest told officers that he saw Saltzman pull a firearm from the front of his waistband and fire the weapon;

- other attendees were unable or unwilling to identify the fired weapon or indicate where it could be located;

- when contacted, Saltzman had on his person a revolver and a magazine for a 1911 handgun;

- when contacted, Saltzman's girlfriend had on her person an empty holster for a 1911 handgun; and

- Saltzman and his girlfriend lived at the house where the shooting occurred.

¶ 21 The affiant represented that, at the time, (1) "[i]t [wa]s unknown what weapon was used in the shooting and it ha[d] yet to be recovered"; (2) "[i]t [wa]s unknown if the weapon was hidden prior to the arrival of the deputies"; (3) Saltzman "was

11

uncooperative with deputies and refused to speak"; and

(4) Saltzman's girlfriend "could not provide any information

regarding the weapon used in the shooting."

¶ 22    Based on this record, we conclude that, had the information

collected during the protective sweep been redacted, the remaining

content in the affidavit provided sufficient information to establish

probable cause for securing the search warrant under which the

Colt 1911 was seized.  *See Kerst*, 181 P.3d at 1171-72 ("There is a

presumption of validity afforded to the affidavit submitted in

support of the search warrant."); *see also Bartley v. People*, 817

P.2d 1029, 1033 (Colo. 1991) (concluding that, if the challenged

information contained in an affidavit was disregarded, "the warrant

and search conducted pursuant to it [could be] sustained on the

basis of the other completely independent information in the

affidavit"); *McFall*, 672 P.2d at 537-39 (concluding that, if

information collected during an illegal warrantless arrest and

search was redacted, the affidavit still "provided sufficient reliable

information . . . to permit a judge to find probable cause to search");

*People v. Bustam*, 641 P.2d 968, 973 (Colo. 1982) (The inclusion of

facts collected during a warrantless entry into the defendant's home did not "taint the otherwise valid affidavit.").

¶ 23 Accordingly, Saltzman failed to establish a reasonable possibility that an error in denying the motion to suppress the fruits of the protective sweep contributed to his conviction.

¶ 24 Moreover, even if the search warrant would have lacked probable cause (after excluding the information collected during the protective sweep from the affidavit), we conclude that the failure to exclude the Colt 1911 from trial was harmless beyond a reasonable doubt. *See People v. Tomaske*, 2019 CO 35, ¶ 10 ("When there is a Fourth Amendment violation, courts can apply the exclusionary rule to suppress evidence that was discovered as a result of the violation.").

¶ 25 Saltzman's trial strategy was to mitigate his criminal culpability. In doing so, he admitted his guilt on the prohibited use of a weapon (Colt 1911) charge and conceded that he fired the gun from which the bullet that struck the victim was discharged. In light of this defense theory, we are convinced that the introduction of the Colt 1911 wasn't critical to the prosecution's case.

Importantly, Saltzman doesn't assert that, had the Colt 1911 been suppressed, he would have advanced a different trial strategy.

¶ 26    Furthermore, we are convinced that the record contains overwhelming evidence, other than the Colt 1911, to prove that Saltzman fired that gun at the victim and that he possessed the Colt 1911 while under the influence.  Specifically, witnesses testified that Saltzman was intoxicated on the evening in question, that he was seen firing a Colt 1911, and that he had accessories for a Colt 1911 on his person.

## V.    Other Contentions

¶ 27    Saltzman also contends that the trial court applied an erroneous legal standard when analyzing whether any of the officers who entered his home had legal authority to do so and whether the first responding officer conducted an illegal search that preceded the protective sweep.  We aren't persuaded that the court erred in either respect.

¶ 28    First, Saltzman asserts that "the trial court overlooked the fact that every officer who entered [his] house prior to the so-called protective sweep did so without a warrant and without [his] consent."  While it's true that the court didn't make any explicit

findings regarding the legality of law enforcement's entry into his home, the omission occurred because the issue wasn't raised below. Saltzman's motion to suppress and his argument at the hearing focused on law enforcement's conduct after they made entry into the home, not the legality of the entry itself.

¶ 29 Saltzman insists that this argument was preserved because, although he "did not explicitly state that police entered his house without consent in his suppression motion and did not use the word 'consent,' . . . the issue was discussed during throughout [sic] the hearing on the motion." We aren't persuaded. *See Phillips*, ¶ 12 ("Motions to suppress 'should state with reasonable specificity the legal grounds upon which [they] are based' in order 'to put the prosecution on notice of the contentions it must be prepared to meet at a suppression hearing and to inform the court of the issues to be decided.'" (quoting *People v. Jansen*, 713 P.2d 907, 912 n.8 (Colo. 1986))).

¶ 30 Accordingly, Saltzman's challenge to the officers' entry into his home isn't preserved and is thus subject to plain error review. *See id.* at ¶ 22 (suppression arguments asserted for the first time on appeal are forfeited and subject to plain error review).

¶ 31    We conclude that the trial court didn't obviously err by failing to address, sua sponte, whether law enforcement's warrantless entry into his home violated his constitutional rights. *See People v. Petschow*, 119 P.3d 495, 505 (Colo. App. 2004) ("Plain error assumes that the court should have intervened sua sponte because the error was so obvious."). This is so because exceptions to the warrant requirement quite clearly could have justified the officers' warrantless entry. *See Stock*, ¶¶ 16, 23 (Voluntary consent to enter is an exception to the warrant requirement; "[t]he police may assume, without further inquiry, that a person who answers the door in response to their knock has the authority to let them enter." (quoting *People v. Ledesma*, 140 P.3d 657, 705 (Cal. 2006))); *People v. Stone*, 2021 COA 104, ¶¶ 47-49 (absent a revocation of consent or an objection to reentry, consent for police to initially enter a home can extend to subsequent entries); *see also People v. Aarness*, 150 P.3d 1271, 1277 (Colo. 2006) (Exigent circumstances is an exception to the warrant requirement; an exigent circumstance to justify a warrantless entry into a home includes when "there is a colorable claim of emergency threatening the life or safety of another."). Indeed, undisputed evidence in the record shows that

16

one of the party goers consented to the officer's entry upon arrival and that officers were responding to a report that an occupant of the house had been shot.

¶ 32 Second, Saltzman argues that the trial court erred by finding that the first responding officer didn't conduct a search of his home prior to the protective sweep. Despite the court's inclusion of such a finding in the factual history section of its order, we aren't convinced that Saltzman raised this particular argument. *See* *Phillips*, ¶¶ 12, 22.

¶ 33 Nevertheless, even assuming this assertion was preserved, we conclude that any error in the court's finding was harmless beyond a reasonable doubt because Saltzman doesn't identify any evidence or information found during this challenged search that contributed to his conviction.

## VI. Disposition

¶ 34 The judgment is affirmed.

JUDGE YUN and JUDGE LUM concur.