The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Larry J. RUSSOM, Sr., Defendant–Appellant.

No. 02CA1920.

Colorado Court of Appeals, Div. II.

July 1, 2004.

Certiorari Denied Jan. 24, 2005.

Ken Salazar, Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Kathy Goudy, Carbondale, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Larry J. Russom, Sr., appeals the judgment of conviction entered upon jury verdicts finding him guilty of two counts of unlawful distribution of a controlled substance, one count of conspiracy to distribute a controlled substance, one count of possession with intent to distribute a controlled

substance, a special offender count for possession of a gun, and three special offender counts for distribution of a controlled substance on school grounds. Defendant also appeals his sentence. We affirm.

During undercover operations, the police and a confidential informant made controlled purchases of various quantities of cocaine from defendant. Based on one officer's affidavit, the police requested and obtained a search warrant for defendant's residence, which allowed for an unannounced (no-knock) entry. After once postponing execution of the warrant because defendant was not in the residence, the police executed the search warrant seven days after it was issued. During the execution of the warrant, police shot defendant as he reached for a gun.

Later, the police obtained and executed two more search warrants for evidence of the shooting, as well as firearms and narcotics. During the searches the police found two rifles, marijuana, cocaine, and cash, which included some of the marked bills from one of the controlled buys. Approximately seven weeks after execution of the first search warrant, defendant was arrested and charged with three counts of unlawful distribution of a controlled substance, two conspiracy counts, one count of unlawful possession with intent to distribute, one count of possession of marijuana, and five special offender counts.

The jury acquitted defendant of one count of distribution of a controlled substance and the corresponding conspiracy count, the possession of marijuana count, and one special offender count, but convicted him of the remaining eight counts. The trial court sentenced defendant to three concurrent eight-year terms in the custody of the Department of Corrections for the distribution and possession with intent to distribute counts and a four-year sentence on the conspiracy count, to be served consecutively to the eight-year sentence. This appeal followed.

## I.

■ Defendant first contends that the trial court abused its discretion by providing the jury with equipment to allow it to replay audiotapes that were admitted into evidence. We disagree.

■ Jurors may have access during deliberations to nontestimonial recordings that depict the event itself rather than a narration thereof. *See People v. Aponte,* 867 P.2d 183, 188 (Colo.App.1993)(videotape and transcription of drug transaction could be given to the jury during deliberations).

Here, during one of the controlled buys, a police informant wore a recording device and recorded the transaction. At trial, the audio recording of that purchase was admitted into evidence. During deliberations, the jury asked the court to provide equipment to allow it to replay the tape. Over defendant's objection, the court granted the request.

The audiotape at issue here does not contain testimonial statements of witnesses. Rather, it is a tangible exhibit with verbal content and is nontestimonial in character because it depicts the actual commission of the crime itself. Thus, we perceive no abuse of discretion in the trial court's decision to provide equipment with which to replay the recording. *See People v. Aponte, supra; see also United States v. Koska,* 443 F.2d 1167 (2d Cir.1971)(jury in bribery case could properly take into its deliberations tape recording and accompanying transcript of conversation in which the bribe was offered).

In light of this determination, we need not address the application of *People v. McKinney,* 80 P.3d 823 (Colo.App.2003)(*cert.* granted Dec. 1, 2003), or the application of C.R.C.P. 47(m) here.

## II.

Defendant next contends that the trial court erred in denying his motion to suppress evidence obtained during the search of his residence. Specifically, he asserts that (1) the affidavit supporting the warrant demonstrated a lack of probable cause; (2) there were insufficient exigent circumstances to justify the warrant's no-knock authorization; and (3) because the search warrant was not executed until seven days after it was issued, the warrant was stale. We address and reject each contention in turn.

## A.

To be constitutionally proper, a search warrant must be based upon probable cause supported by oath or affirmation particularly describing the place to be searched and the objects to be seized. *People v. Meraz,* 961 P.2d 481 (Colo.1998).

Probable cause for a search warrant exists if the affidavit submitted in support of the warrant alleges sufficient facts to cause a person of reasonable caution to believe that contraband or other evidence of criminal activity is located at the place to be searched. *People v. Miller,* 75 P.3d 1108 (Colo.2003).

Whether facts in an affidavit establish probable cause depends on a practical, nontechnical totality of the circumstances approach. *People v. Abeyta,* 795 P.2d 1324, 1327 (Colo.1990). In assessing whether an affidavit establishes probable cause, a court can consider only that information contained within the "four corners" of the affidavit. *People v. Meraz, supra.*

The duty of a court reviewing a magistrate's determination of probable cause is to ensure that the magistrate had a substantial basis for concluding that probable cause existed, and any doubts must be resolved in favor of the magistrate's determination. *People v. Leftwich,* 869 P.2d 1260 (Colo.1994).

In reviewing suppression issues, we give deference to the trial court's findings of historical fact and will not overturn them if supported by competent evidence in the record. As a reviewing court, our role is to determine whether the trial court's legal conclusions are supported by sufficient evidence and if it applied the correct legal standards. We review the legal issues de novo because the legal effect of the facts is a question of law. *People v. Allison,* 86 P.3d 421 (Colo. 2004).

Here, the affidavit in support of the search warrant, signed under oath by one of the officers involved in the controlled purchases, detailed each purchase, named defendant as the person who provided the cocaine for purchase, and listed defendant's residence as the place where the last purchase occurred. In addition, the affidavit stated that after completing the last purchase, the confidential informant asked defendant whether he could come back later to purchase more cocaine and defendant answered affirmatively, telling him that he could park in front of the house the next time. The affidavit also listed drugs, money, and any drugmaking equipment or paraphernalia as the items that were to be seized during the search.

Because the affidavit describes an ongoing drug trafficking operation at defendant's home, we conclude that the affidavit established probable cause for the issuance of the search warrant.

Defendant's reliance on *People v. Miller, supra,* to support a contrary result is misplaced. In *Miller,* the supreme court determined that a search warrant was not supported by probable cause because the accompanying affidavit contained information that was nearly a month old and did not establish that the defendant was engaging in a course of conduct at the location to be searched.

Here, in contrast, the affidavit was dated the same day as the last controlled purchase and alleged a continuing activity of selling drugs. In addition, the information in the affidavit pertaining to defendant's residence was corroborated by police surveillance. Accordingly, *Miller* is distinguishable.

## B.

We reject defendant's contention that there were insufficient exigent circumstances to justify the warrant's no-knock authorization.

In general, the Fourth Amendment requires law enforcement officers to knock and announce their presence when executing a warrant. *People v. Gifford,* 782 P.2d 795 (Colo.1989). However, in cases involving exigent circumstances, as when there is a threat of physical violence or evidence would be at risk of destruction in the event of an announced entry, a no-knock entry is permissible. The showing required for no-knock authorization is not high. *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997).

To justify a no-knock entry, the police must have an objectively reasonable

suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile or that it would inhibit the effective investigation of a crime by, for example, allowing the destruction of evidence. *Richards v. Wisconsin, supra.* In reviewing a challenge to the no-knock execution of a search warrant, we review the execution from the perspective of reasonable officers who are legitimately concerned not only with doing their job, but also with maintaining their own safety. *United States v. Colonna,* 360 F.3d 1169 (10th Cir.2004).

Here, the affidavit alleged that defendant was known to carry a gun in a holster and to have a shotgun by his front door because he was paranoid that someone was going to kill him. Based on this information, the police requested that the search warrant be an immediate entry warrant for the safety of the officers.

Because the warrant alleged specific facts indicating that the officers might reasonably be in danger if they were required to knock and announce their entry, we conclude that there were sufficient exigent circumstances to justify the no-knock authorization.

### C.

▉ Defendant asserts that the warrant was stale because the police waited seven days to execute it. We disagree.

Section 16–3–305(6), C.R.S.2003, provides that a search warrant shall be executed within ten days after its issuance. Here, because the search was executed seven days after the warrant was issued, there was no statutory violation.

▉ Nevertheless, searches executed within a proper statutory period may still violate the Constitution if the information upon which the warrant was based becomes stale. *See State v. Peters,* 261 Neb. 416, 622 N.W.2d 918 (2001)(it does not follow that compliance with the legislatively imposed time limit will in every instance result in a valid search).

▉ Whether a delay in executing a search warrant is unconstitutional depends on whether the probable cause recited in the affidavit continues to exist at the time the warrant is executed. *See United States v. Rael,* 467 F.2d 333 (10th Cir.1972)(five-day

delay in executing search warrant was not unreasonable and met the "forthwith" requirement of criminal rule of procedure, where probable cause upon which the warrant issued still existed when warrant was executed); *see also State v. Peters, supra* (even though search warrant was executed five days after it was issued, no constitutional violation occurred because the probable cause upon which the warrant was based still existed at the time of execution).

▉ In determining whether probable cause has dissipated over time or the warrant has become stale, a court must evaluate the nature of the criminal activity and the kind of property for which authorization to search is sought. *See United States v. Williams,* 10 F.3d 590 (8th Cir.1993). A delay in execution does not render the search unconstitutional if it remains likely that the items sought will be found in the place to be searched. *See State v. Peters, supra.*

Here, as noted above, the affidavit detailed multiple drug transactions between defendant and the confidential informant and stated that defendant had invited the informant to return to the home later to buy more cocaine. The trial court found, with record support, that the invitation to return was an indication that the drugdealing activities at defendant's home were ongoing and could be expected to continue. Hence, probable cause continued to exist when police executed the warrant. Therefore, we conclude that the delay in executing the warrant did not render the warrant stale or the resulting search unconstitutional.

### D.

▉ To the extent defendant asserts that the search warrant was a pretext to effect his arrest inside his home, we conclude that this argument was not raised in the trial court. Because it is raised for the first time on appeal, we decline to address it. *See People v. Young,* 987 P.2d 889 (Colo.App.1999)(a suppression issue is not properly preserved for appellate review if it is not presented to the trial court and is raised for the first time on appeal).

### III.

Defendant next contends that the trial court erred in granting use immunity to a witness. In addition, defendant asserts that the court violated his Sixth Amendment right to confront witnesses when it limited his cross-examination of that witness. We disagree with both contentions.

### A.

Upon application of the prosecution, the trial court has discretion to grant immunity to a witness. Section 13–90–118, C.R.S.2003; *People v. Eggert,* 923 P.2d 230 (Colo.App.1995). In addition, the prosecution has considerable discretion in determining when to request use immunity for a witness. *See People v. Merrill,* 816 P.2d 958 (Colo.App.1991)(§ 13–90–118 grants the prosecuting attorney sole discretionary authority to request such immunity).

Here, the prosecution sought to have the confidential informant testify against defendant and requested the trial court to grant the informant use immunity. Over defendant's objection, the court granted the motion, believing that it was required to do so by the statute.

This witness's testimony detailed the various drug transactions underlying the charges against defendant. Therefore, his testimony was an essential part of the prosecution's case.

As noted above, the trial court has discretion to grant the prosecution's request for immunity. Accordingly, when, as here, the prosecution believes that the witness's testimony is necessary in the interest of justice and the record clearly shows that the testimony is essential to the prosecution's case, we perceive no error in the grant of immunity. Consequently, the court's incorrect belief that it was required by the statute to grant immunity is of no consequence.

### B.

The right to confront and cross-examine witnesses is guaranteed by the Sixth Amendment and by Colo. Const. art. II, § 16. *People v. Montoya,* 942 P.2d 1287, 1293 (Colo.App.1996). As pertinent here, although a trial court has considerable discretion in determining the scope and duration of cross-examination, it is constitutional error excessively to limit cross-examination relating to the witness's credibility, such as bias, prejudice, or motive for testifying. *Merritt v. People,* 842 P.2d 162 (Colo.1992).

Here, the prosecution witness who was granted immunity had two criminal cases pending against him. Based upon the prosecution's motion, the court prohibited defendant from cross-examining the witness about the underlying facts of those pending cases.

However, the court's prohibition was very limited. Defense counsel was permitted to question the witness about the existence and nature of the pending cases, the potential penalties associated with them, and his grant of immunity for testifying. In addition, defense counsel explicitly questioned this witness about his motives for testifying and his bias against defendant.

We conclude that defendant's constitutional right to confront witnesses was not violated. The factual details of the pending cases against this witness were not relevant to the witness's biases, prejudices, or motives for testifying against defendant.

### V.

Defendant contends that the trial court abused its discretion in denying his motion for a mistrial after the court granted the prosecution's motion to dismiss a juror who arrived late for trial. We disagree.

A mistrial is a drastic remedy. The trial court has broad discretion to grant or deny a motion for mistrial. A reviewing court will not disturb a trial court's decision absent gross abuse of discretion and prejudice to the defendant. Moreover, a mistrial is warranted only where the prejudice to the defendant cannot be remedied by other means. *People v. Abbott,* 690 P.2d 1263 (Colo.1984).

Likewise, a trial court's decision to dismiss a juror is reviewed for abuse of discretion. *See People v. Abbott, supra.*

As pertinent here, § 16–10–106, C.R.S. 2003, provides that the trial court may dismiss a juror who is unable to continue until a verdict is reached because of illness or any other cause.

During the second day of trial, a juror was nearly two hours late for jury call. Over defense counsel's objection, the trial court dismissed that juror and replaced him with an alternate. Defendant then moved for a mistrial, which the court denied.

This trial was scheduled to last a week, and numerous witnesses were scheduled to testify, requiring that a schedule be maintained. Furthermore, defendant has not alleged that the alternate juror, who was subjected to voir dire and challenges before trial, was biased against him or that the replacement of the juror resulted in an unfair trial. *See People v. Tippett,* 733 P.2d 1183 (Colo.1987)(although defendant is entitled to a trial by a fair and impartial jury, he or she is not entitled to any particular juror).

Accordingly, because the trial court has substantial discretion to manage the flow of the trial, *see Lee v. People,* 170 Colo. 268, 460 P.2d 796 (1969), and no prejudice resulted from the dismissal of this juror, we conclude that the trial court acted within its discretion in dismissing the juror. Hence, we reject defendant's assertion that the court abused its discretion in denying his motion for mistrial.

V.

Defendant contends that the trial court erred in imposing a consecutive rather than a concurrent sentence for his conspiracy to distribute and controlled substance distribution convictions. We disagree.

As pertinent here, when a defendant is convicted of multiple offenses, the sentencing court has discretion to impose consecutive or concurrent sentences. However, § 18–1–408(3), C.R.S.2003, mandates imposition of concurrent sentences for offenses when the counts are based on the same act or series of acts arising from the same criminal episode and the evidence supporting the counts is identical. *People v. Jurado,* 30 P.3d 769 (Colo.App.2001).

Here, although the conspiracy and distribution charges were based on the same series of acts, the convictions for each were not based on identical evidence.

Conspiracy to distribute a controlled substance requires proof that the defendant entered into an agreement with another person to commit the crime, and that defendant, or a person with whom he conspired, performed an overt act in furtherance of such conspiracy. *See* § 18–2–201, C.R.S.2003.

To prove distribution of a controlled substance, the prosecution need only prove that defendant knowingly distributed a controlled substance. *See* § 18–18–405(1)(a), C.R.S. 2003.

While similar evidence may support both counts, the conspiracy count requires additional proof that defendant entered into an agreement. Here, that proof came in the form of testimony from a codefendant that he and defendant agreed to sell the cocaine to the confidential informant and took a substantial step in support thereof. Because the two crimes require proof of different elements and, in fact, were supported by different evidence, the trial court did not abuse its discretion in imposing consecutive sentences.

The judgment and sentence are affirmed.

Judge CARPARELLI and Judge METZGER * concur.