The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Ronald Owen SMITH, Defendant–Appellant.

No. 08CA0657.

Colorado Court of Appeals, Div. I.

Jan. 6, 2011.

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Sean C. Thomson, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

Defendant, Ronald Owen Smith, appeals a judgment of conviction based on a jury verdict finding him guilty of conspiracy to commit theft. We affirm.

## I. Background

From January 25 to February 12, 2007, purses were stolen from cars owned by four women while they were inside a day care center in Jefferson County. Checks and credit cards taken from these purses were used at stores to purchase merchandise without the owners' knowledge or permission.

Police obtained eyewitness descriptions and video surveillance footage of a person who had made some of the fraudulent purchases with the stolen credit cards and checks. They identified her as Michelle Schreiber (codefendant). They later connected her with purchases made with credit

cards or checks from all four of the stolen purses.

Video footage of two of these transactions showed that a man—later identified as defendant—accompanied codefendant. The police learned that defendant was also with codefendant during some of the other fraudulent purchases.

In March 2007, they were separately charged in Jefferson County with having committed the crime of conspiring to commit theft, a class five felony. Codefendant was a named coconspirator in defendant's case. They were also charged in Adams County with having made fraudulent purchases with credit cards and checks that had been stolen in a similar way.

Defendant's trial was originally set for the end of October 2007. On the day of trial, the prosecutor sought to continue the trial because he was ill, and proposed that the trial be reset in February 2008, when defendant's Adams County case would probably be resolved.

The trial court granted the request for a continuance, but proposed November 13, 2007, for trial. Defendant asked that the trial be reset after November 19, 2007, because codefendant, who had pled guilty in her Jefferson County case, was to be sentenced on that day. Defendant stated that he wished to call codefendant as a witness at trial, but he thought that codefendant's Fifth Amendment privilege against self-incrimination might be implicated if she testified before she was sentenced. Citing docket congestion, including a two-week murder trial, the court denied this request and reset the trial for November 13.

At trial, defendant contended that he was unaware that codefendant was engaged in illegal activity. He did not dispute evidence that placed him with codefendant when she was making some of the fraudulent transactions.

In reply, the prosecution offered evidence that defendant had possessed some of the stolen credit cards, and played a surveillance video that showed defendant pull one of the stolen credit cards from his pocket and hand it to codefendant. Codefendant used the card to make a purchase.

The prosecution also presented evidence about the Adams County case, arguing that it was similar to the Jefferson County case. Stolen credit cards involved in the Adams County case were found in defendant's possession when he was arrested. Receipts from purchases made with these credit cards were found in defendant's wallet and in the car he was driving.

Defendant called codefendant as a witness. She had been sentenced in the Adams County case, but she had not yet been sentenced in the Jefferson County case. She consulted with her attorney by telephone immediately before her testimony, and the attorney listened to the proceedings on the telephone while she was questioned.

Defense counsel asked codefendant her name. She replied by stating her name.

Defense counsel then asked codefendant if she were "acquainted" with defendant. Codefendant replied, "I've been instructed and advised by my attorney ... that I have the right to plead the Fifth due to my mental health. That's all I'm going to say."

The trial court asked her, "[Is it] true that you do not wish to testify as to any matter in this case?" Codefendant answered, "Not at this time, no." The trial court allowed her to leave.

Defendant argued that codefendant's invocation of her privilege against self-incrimination was inappropriate. He contended that codefendant's testimony on certain matters would not have implicated her right to be free from compelled self-incrimination. These matters included testimony about (1) codefendant's previous relationship with defendant; (2) their child; (3) where they lived; (4) the death of her father shortly before Christmas; and (5) "anything" that happened in the Adams County case because she had already pled guilty and been sentenced in that case.

The trial court disagreed because codefendant had not yet been sentenced in the Jefferson County case. The court explained its rationale.

In connection with sentencing ... the issues of guilt ... go to [the] issue of relative culpability[,] and they go to the extent of the entire criminal scheme. Such matters can be raised both in aggravation and in mitigation at sentencing.

There is evidence before this jury from which a rational fact finder could conclude that [defendant and codefendant] were in a significant deliberate ongoing scheme....

[Codefendant] does not have any obligation to incriminate herself as to the full extent of the criminal scheme, as to who was more culpable and more active in terms of the planning or execution of these thefts, as to who benefitted primarily from the thefts.

And all of those are legitimate matters that could be raised at time of sentencing. Thus given the fact that a rational judge or rational fact finder could conclude that these two were involved in a significant ongoing scheme, it seems to me that invoking her right as to the nature of her relationship with [defendant] is actually a reasonable exercise of that right....

If I had known that she was going to exercise her Fifth Amendment right from the get-go, I wouldn't have had her do it in front of the jury.

I thought she was going to answer some questions and exercise that right only selectively. And I think that's what you all thought or we wouldn't have done it in front of the jury.

Defendant then moved for a continuance of at least a week so that codefendant could be recalled after she had been sentenced in the Jefferson County case. The trial court denied this request, and the trial resumed.

At that point, the prosecution stipulated that defendant could introduce into evidence a four-page letter that codefendant had written in the Adams County case. As relevant here, it stated:

I would've never thought that [defendant] would end up with the charges he is facing. He is a victim of my crimes, just because I had him with me didn't mean he knew anything that I was doing. I don't know how I will ever be able to forgive myself for causing [defendant's] current problems.... As far as I see it, all his charges that are any way related to my crimes should be dismissed.

Defendant called no other witness and offered no other evidence. The jury found him guilty as charged.

## II. Codefendant's Testimony

Defendant contends that the trial court violated his Sixth Amendment right to present a defense. It did so, he contends, by accepting codefendant's invocation of her Fifth Amendment right to be free from compelled self-incrimination and then excusing her. We disagree.

### A. Standard of Review

As an initial matter, we must determine the appropriate standard of review. The parties agree that we should review the trial court's decision for an abuse of discretion. However, the cases they cite for this proposition do not directly address what the standard should be when we review a trial court's decision to permit a witness to invoke his or her Fifth Amendment privilege against self-incrimination. *See People v. Lowe,* 660 P.2d 1261, 1264 (Colo.1983) (determination of relevancy of evidence is within a trial court's discretion), *overruled in part on other grounds by Callis v. People,* 692 P.2d 1045, 1050 (Colo.1984); *People v. Davis,* —— P.3d ——, ——, 2010 WL 2105878 (Colo.App.2010) (prosecutor's comment in closing argument did not infringe upon the defendant's Fifth Amendment rights); *People v. Young,* 987 P.2d 889, 894 (Colo.App.1999) (consideration of defendant's lack of remorse at sentencing violated his Fifth Amendment privilege against self-incrimination); *People v. Abeyta,* 728 P.2d 327, 331 (Colo.App.1986) (trial court properly concluded that testimony of witnesses who would invoke their Fifth Amendment rights was irrelevant).

We have not found any Colorado appellate opinion that directly addresses the proper standard of review in these circumstances. Authority from other jurisdictions is conflicting. *Compare, e.g., United States v. Longstreet,* 567 F.3d 911, 922 (7th Cir.2009) ("We review a district court's Fifth Amendment

privilege determination for an abuse of discretion."), *and United States v. Washington,* 318 F.3d 845, 856 (8th Cir.2003)("We review the court's decision to permit the witness to invoke his or her Fifth Amendment privilege for abuse of discretion."), *with United States v. Rivas–Macias,* 537 F.3d 1271, 1278 (10th Cir.2008)("Whether an individual may properly invoke the privilege against self-incrimination is a question of law, which we review de novo."). In light of this conflicting case law, we will exercise an abundance of caution and assume, without deciding, that the proper standard of review is de novo. We resolve this issue by applying that standard.

### B. Analysis

■ There is tension between the rights of a defendant and the rights of a witness. On the one hand, "[t]he Fifth Amendment of the United States Constitution ... can be invoked by anyone whose statements or answers might incriminate that person." *People v. Blackwell,* 251 P.3d 468, 474 (Colo.App. 2010). On the other hand, "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The right to present a defense is not absolute, however, and it "does not include the right to compel a witness to waive his or her Fifth Amendment privilege." *People v. Coit,* 50 P.3d 936, 938 (Colo.App.2002) (citing *United States v. Trejo–Zambrano,* 582 F.2d 460, 464 (9th Cir.1978)).

■ Instead, "[w]hen a defendant's rights under the Sixth Amendment collide with a witness's Fifth Amendment rights, the defendant's right to compulsory process must give way to the witness's privilege not to give self-incriminating testimony." *Id.* Therefore, in this case, if codefendant properly invoked her Fifth Amendment privilege, there was no violation of defendant's right to present a defense. *Id.; see also Rivas–Macias,* 537 F.3d at 1278 ("Traditional testimonial privileges—including the Fifth Amendment privilege against self-incrimination—represent legitimate trial interests sufficient to force a

defendant's right to present a defense to give way.").

■ The Fifth Amendment provides a witness with a privilege to decline to answer questions if the answers would incriminate him or her. *People in Interest of I.O.,* 713 P.2d 396, 397 (Colo.App.1985). "The privilege against self-incrimination may not be asserted in advance of questions actually propounded; it is an option of refusal, not a prohibition of inquiry." *Id.* "The proper procedure is to wait until a question which tends to be incriminating has been asked and then decline to answer." *People v. Austin,* 159 Colo. 445, 450, 412 P.2d 425, 427 (1966).

■ There are limits on this privilege, and it is for the court, and not the witness, to determine whether a witness's refusal to testify is justified under the Fifth Amendment. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). When making this determination, the court should give the Fifth Amendment a "liberal construction in favor of the right it was intended to secure." *Id.* This means that

[t]he protections of the Fifth Amendment can be invoked by anyone whose statements or answers to questions could incriminate him, either by directly admitting the commission of illegal acts, or by relating information which would "furnish a link in the chain of evidence needed to prosecute the claimant" for such acts.

*Griffin v. Western Realty Sales Corp.,* 665 P.2d 1031, 1033 (Colo.App.1983) (quoting *Hoffman,* 341 U.S. at 486, 71 S.Ct. 814). "A court may deny a witness'[s] claim of privilege only if it is absolutely clear that the witness is mistaken and the testimony cannot possibly incriminate him." *People v. Villa,* 671 P.2d 971, 973 (Colo.App.1983).

■ There is no basis for the assertion of the privilege when a witness has been charged with a crime, but "the sentence has been fixed and the judgment of conviction has become final." *Mitchell v. United States,* 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999); *see also People v. McBride,* 228 P.3d 216, 228 (Colo.App. 2009)(the privilege against self-incrimination "continues to apply at sentencing"). "Where

the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony." *Mitchell,* 526 U.S. at 326, 119 S.Ct. 1307.

■ Based on our de novo review, we reach several conclusions. First, we conclude that codefendant waited until an answer to a question could potentially incriminate her, and then she declined to answer. Thus, there was no blanket invocation of her Fifth Amendment right. *See Austin,* 159 Colo. at 450, 412 P.2d at 427.

■ Second, we conclude the record supports the trial court's findings that codefendant properly invoked her Fifth Amendment privilege against self-incrimination, and that answers to defense counsel's questions could provide a "link in the chain" of evidence necessary to prosecute codefendant or to increase her sentence. *See Griffin,* 665 P.2d at 1033. This is so because the record establishes that:

- Codefendant clearly and unequivocally invoked her right to remain silent;
- The trial court recognized that codefendant had not been sentenced in her Jefferson County case, and that information about guilt or culpability could be considered at the sentencing hearing;
- Such information could be seen as a basis for imposing a longer, more aggravated sentence;
- The charge involved a conspiracy, codefendant was a named coconspirator, and an element of the crime of conspiracy is the agreement between coconspirators to engage in criminal conduct, *see* § 18-2-201(1), C.R.S.2010;
- Evidence had been presented at trial that linked defendant and codefendant in a "significant deliberate ongoing scheme"; and
- Codefendant did not have "any obligation" to establish whether she or defendant "was more culpable and more active in terms of the planning or execution of these thefts" or "who benefitted primarily from them."

Third, we conclude that it was not "absolutely clear" that codefendant's testimony could not incriminate her. *See Villa,* 671 P.2d at 973. Indeed, answering the questions whether she knew defendant, whether she had borne his child, whether they lived together and where they lived, and whether her father had died shortly before Christmas could all potentially be used at her sentencing hearing as "links in the chain" to show that she was as responsible, if not more responsible, than defendant for the thefts. *See Mitchell,* 526 U.S. at 326, 119 S.Ct. 1307. Further, any information about the Adams County case could have been used for the same purpose.

These three conclusions lead us to a fourth. We hold that codefendant properly invoked her Fifth Amendment right, and, therefore, defendant's Sixth Amendment right to present a defense was not impinged upon by the trial court's recognition of that right. *See Coit,* 50 P.3d at 938.

### III. Continuance

■ Defendant contends that the trial court erred by not continuing the trial until codefendant was sentenced in the Jefferson County case, and, thus, she could no longer assert her Fifth Amendment privilege. We disagree.

■ "A trial court's decision to grant or deny a continuance is entitled to deference and may not be reversed on appeal absent a gross abuse of discretion." *People v. Cruthers,* 124 P.3d 887, 888 (Colo.App.2005). "The totality of the circumstances is relevant when determining whether the trial court committed an abuse of discretion by denying a continuance." *People in Interest of D.J.P.,* 785 P.2d 129, 131 (Colo.1990). "A trial court abuses its discretion in denying a motion to continue if, under the totality of the circumstances, its ruling is manifestly arbitrary, unreasonable, or unfair." *People v. Mandez,* 997 P.2d 1254, 1265 (Colo.App.1999).

■ When considering a motion to continue, "the trial court must consider the peculiar circumstances of each case and balance the equities on both sides." *People v. Fleming,* 900 P.2d 19, 23 (Colo.1995). As relevant here, the trial court must consider the "prejudice to the moving party if the

continuance is denied and whether that prejudice could be cured by a continuance, as well as the prejudice to the opposing party if the continuance is granted." *Interest of D.J.P.*, 785 P.2d at 132. A defendant must show that the denial of the continuance resulted in actual prejudice. *People v. Alley*, 232 P.3d 272, 274 (Colo.App.2010). It is not an abuse of discretion when a trial court refuses to grant a defendant a continuance because his or her codefendant has invoked the Fifth Amendment privilege against self-incrimination. *See People v. Gable*, 647 P.2d 246, 253–54 (Colo.App.1982).

Relying on *Gable*, we conclude that the trial court did not abuse its discretion by denying defendant's request for a continuance. Based on our review of the record, we hold that this decision was not manifestly arbitrary, unreasonable, or unfair. *See Mandez*, 997 P.2d at 1265.

Further, we conclude that the prejudice defendant alleges was caused by the trial court's decision—codefendant's unavailability due to her invocation of her Fifth Amendment privilege—would not necessarily have been cured by the continuance. First, codefendant may have decided to appeal whatever sentence she received in the Jefferson County case, and, therefore, her Fifth Amendment privilege would remain intact until the case became final after appeal. *See Villa*, 671 P.2d at 973 ("[W]hen a sentence is being appealed, we hold that a defendant retains protection from the risk of greater punishment as a result of his own statements."); *Martin v. Flanagan*, 259 Conn. 487, 496, 789 A.2d 979, 984 n. 4 (2002)(collecting cases). Second, there was no guarantee that codefendant's sentencing hearing would proceed on the day that it was scheduled.

Moreover, based on developments at trial, we also conclude that defendant has not established that he was actually prejudiced by the trial court's decision. *See Alley*, 232 P.3d at 274 (defendant was not prejudiced by denial of a continuance because counsel's performance at trial did not "bear out" her "concerns about her lack of preparation"). The prosecution stipulated to the admission of codefendant's letter that was written for the sentencing hearing in the Adams County case. It contained statements exculpating defendant. Although codefendant did not testify, the jury heard from her in another way, and thus learned of information favorable to defendant.

■ In this regard, we reject defendant's contention that the trial court's alleged dismissive treatment of the letter eliminated whatever exculpatory value it may have had. When the letter was admitted, the trial court told the jury, "Don't take time to read it. But look at it so you at least know what this document is because it's likely some reference will be made to it.... Any further evidence on behalf of the defense?"

It is clear from the context of this statement that the court did not tell the jury that it could not or should not read the letter during deliberations. Rather, the court's comment concerned the jury's timing of reading the letter, which was four pages long. Because the letter had been admitted into evidence, the jury was allowed to consider it during deliberations.

Last, we recognize that granting a continuance during trial carries certain risks that should be evaluated in light of the potential benefit to be gained from the continuance. *See Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)(trial court did not abuse its discretion when it denied midtrial continuance motion; "Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons."); *People v. Zapien*, 4 Cal.4th 929, 972, 17 Cal.Rptr.2d 122, 846 P.2d 704, 727 (1993) (in deciding whether to grant a midtrial motion to continue, a trial court "must consider not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion" (quoting *People v. Laursen*, 8 Cal.3d 192, 204, 104 Cal.Rptr. 425, 501 P.2d 1145, 1153 (1972))); *State v. Martinez*, 4 So.3d 712, 714 (Fla.Dist.Ct.App.2009)(midtrial continu-

ances "make it difficult for trial courts to manage their dockets" and "could prompt mistrials").

The judgment is affirmed.

Judge TAUBMAN and Judge CASEBOLT concur.