23CA1246 Peo v Boyles 03-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1246
Chaffee County District Court No. 19CR19
Honorable Patrick W. Murphy, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brett D. Boyles,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHOCK
Freyre and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

---

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Keyonyu X O'Connell, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1 Defendant, Brett D. Boyles, appeals his convictions for second degree murder and first degree assault and his ninety-six-year habitual criminal sentence. We affirm the judgment.

## I. Background

¶ 2 While incarcerated, Boyles got into a fight with another inmate that ended with the other inmate dead. Daniel Egan, who occupied the neighboring cell, witnessed the beating and testified at trial.

¶ 3 According to Egan, the altercation began as a fistfight between Boyles and the victim over something Boyles had said. Eventually, Boyles knocked the victim unconscious, at which point Boyles began kneeing him repeatedly and banging his head against a toilet.

¶ 4 Boyles's cell mate, Chad Merrill, asked Boyles if he was trying to kill the victim, and Boyles said he was not. But Merrill said the victim was "too far gone" and suggested that Boyles let Merrill kill him. After some discussion, Boyles told Merrill to "get the knife."

¶ 5 They put up a sheet as a curtain to conceal the victim, and the victim was stabbed to death. There was conflicting testimony as to which side of the curtain Boyles was on when the stabbing occurred. Egan testified that Boyles was "in front of the sheet" —

1

opposite of the victim — while another inmate witness testified that Boyles was "behind the sheet" with Merrill and the victim.

¶ 6    Boyles was charged with several counts, including first and second degree murder and first and second degree assault. He was convicted by a jury of second degree murder, first degree assault, and second degree assault. The assault convictions merged.

¶ 7    Boyles was adjudicated a habitual criminal based on prior convictions for first degree trespass of a dwelling, false information to a pawnbroker, and aggravated robbery. The district court sentenced him to concurrent prison terms of ninety-six years for second degree murder and sixty-four years for first degree assault.

## II.    Confrontation Right

¶ 8    Boyles contends that the district court violated his constitutional confrontation right by limiting his cross-examination of Egan about Egan's pending criminal charges. We disagree.

### A.    Additional Background

¶ 9    In his opening statement, defense counsel explained that Egan, the prosecution's "star witness," had an extensive criminal history and had been charged with murder in this case. He asserted that Egan had received a very favorable plea deal in

exchange for testifying and that after he was released, he was charged with two more felonies that were still pending in the same county, "giv[ing] him more incentive to keep working his angle."

¶ 10     At that point, the prosecution objected, arguing that any reference to pending cases was inadmissible under CRE 404(b). Defense counsel countered that a defendant is entitled to cross-examine a witness on pending charges in the same jurisdiction as part of their constitutional right to confrontation.  The court reserved ruling on the admissibility of the charges, but it allowed defense counsel to refer to the charges in opening statement.

¶ 11     The court returned to the issue before Egan testified.  Defense counsel noted that Egan had three pending cases: one for misdemeanor menacing and two for aggravated motor vehicle theft.[1] He explained that he did not intend to ask about the facts of the menacing case but intended to address the existence of all three cases and the underlying facts of the two motor vehicle theft cases.

¶ 12     The court concluded that, under the Sixth Amendment, Boyles could cross-examine Egan about the existence of all three pending

---

[1] Egan was also charged with misdemeanor theft in one of the aggravated motor vehicle theft cases.

cases because of the possibility that his testimony might be influenced by those cases. The court also ruled that Boyles could ask Egan about the underlying facts of the theft cases under CRE 608(b) because they were probative of Egan's truthfulness. It barred any inquiry into the underlying facts of the menacing case.

¶ 13 The court then turned to what would happen if Egan invoked his Fifth Amendment right against self-incrimination. Defense counsel argued that if Egan intended to exercise his Fifth Amendment right, the prosecution should not be permitted to call him as a witness. The court denied that request, noting that the Fifth Amendment applied to "only a sliver of [Egan's] testimony." But the court ruled that if Egan invoked the Fifth Amendment in response to questions about the pending theft cases, Boyles would be permitted to introduce the charging documents to explain the facts of those cases. The prosecution agreed to that procedure.

¶ 14 To avoid Egan needing to invoke the Fifth Amendment in front of the jury, the court allowed defense counsel to ask him outside the presence of the jury if he intended to invoke the Fifth Amendment. Defense counsel agreed that was the "best solution."

Egan confirmed that he would invoke the Fifth Amendment in response to any questions about the facts of his pending cases.

¶ 15   Egan testified on direct examination that he had been charged with aggravated motor vehicle theft in two cases but was not serving a sentence in either case.  On cross-examination, defense counsel asked Egan about the misdemeanor menacing case, and Egan testified that it had been dismissed.  Counsel then confirmed again that Egan had two pending felony cases for motor vehicle theft.  After asserting that Egan faced a sentence of up to twelve years in each case, counsel got Egan to acknowledge that the same district attorney who was prosecuting the case against Boyles could recommend the reduction or dismissal of Egan's pending charges.  When Egan was done testifying, defense counsel introduced the redacted arrest affidavits from the two motor vehicle theft cases.

B.   Applicable Law and Standard of Review

¶ 16   Criminal defendants have a constitutional right to confront the witnesses against them.  U.S. Const. amend. VI; Colo. Const. art. II, § 16.  This right is "primarily secured through cross-examination." *Margerum v. People*, 2019 CO 100, ¶ 10.  Impeaching a witness's credibility is an essential component of that right.  *Id.* at ¶ 11.  A

5

court therefore may not excessively limit a defendant's cross-examination of a witness regarding the witness's credibility, especially as to the witness's "bias, prejudice, or motive for testifying." *Merritt v. People*, 842 P.2d 162, 167 (Colo. 1992).

¶ 17 A witness's pending charge may be relevant to the witness's motive for testifying when the testimony might be influenced by a hope or expectation of leniency with respect to that charge. *Kinney v. People*, 187 P.3d 548, 559 (Colo. 2008). And when the pending charge is in the same district as the case in which the witness is testifying, there is always the potential for such influence. *See People v. Reynolds-Wynn*, 2024 COA 33, ¶¶ 34-36. Thus, "the defense must be permitted to question a prosecution witness about his pending criminal charge in the same judicial district in which the witness is testifying against the defendant." *Id.* at ¶ 36.

¶ 18 We review de novo whether there was a violation of the Confrontation Clause. *Id.* at ¶ 31. But even where the Confrontation Clause is implicated, the district court retains broad discretion to impose reasonable limits on cross-examination. *Id.* at ¶ 25. If such limits do not violate a defendant's constitutional rights, we review them for an abuse of discretion. *Id.* at ¶ 31.

## C. Analysis

¶ 19    Boyles asserts that the district court erroneously limited his cross-examination of Egan regarding his pending charges. But the court did not limit Boyles's cross-examination. Consistent with *Reynolds-Wynn*, the court allowed Boyles to question Egan about the existence of all three pending charges and how those charges might have influenced his testimony. *See id.* at ¶ 36. And Boyles did so, explicitly pointing out that the same district attorney who was prosecuting the case against Boyles could recommend the reduction or dismissal of the pending charges. The district court also allowed Boyles to ask Egan about the underlying facts of the two pending motor vehicle theft charges. *See People v. Segovia*, 196 P.3d 1126, 1132 (Colo. 2008) (holding that cross-examination about underlying circumstances of prior act of shoplifting was admissible under CRE 608(b) because "theft is probative of truthfulness").

¶ 20    The only cross-examination the court did not allow was on the underlying facts of the menacing case. But Boyles told the court he did not intend to ask about the facts of that case anyway. And in any event, the underlying facts of the menacing case were not relevant to either Egan's character for truthfulness or his motive for

testifying. *See People v. Russom,* 107 P.3d 986, 992 (Colo. App. 2004) (holding that "[t]he factual details of the pending cases against [the] witness were not relevant to the witness's biases, prejudices, or motives for testifying against [the] defendant").

¶ 21    Boyles's real complaint is not with any restrictions on his cross-examination but with Egan's invocation of the Fifth Amendment in response to questions about the facts underlying the theft charges. But the court could not compel Egan to waive his Fifth Amendment right not to incriminate himself. *See People v. Smith,* 275 P.3d 715, 720 (Colo. App. 2011); *see also People v. Coit,* 50 P.3d 936, 938 (Colo. App. 2002) ("No one can force [a witness] to give up [the Fifth Amendment] privilege."). Rather, when a defendant's Sixth Amendment rights "collide with a witness's Fifth Amendment rights," the witness's Fifth Amendment right must take priority.[2] *Smith,* 275 P.3d at 720; *see also People v. Clark,* 2015

---

[2] Boyles does not argue on appeal, as he did in the district court, that the court should have precluded Egan from testifying altogether. *Cf. People v. Ray,* 109 P.3d 996, 1002 (Colo. App. 2004) ("The decision whether to strike a witness's testimony based on his or her invocation of the Fifth Amendment privilege should focus on 'whether the sought answer was closely related to the commission of the crime, or involved collateral or cumulative testimony concerning credibility.'") (citation omitted).

COA 44, ¶ 81. Because Boyles does not dispute that Egan properly invoked the Fifth Amendment with respect to the facts underlying the theft charges, the district court could not require Egan to answer questions about those facts. *See Smith*, 275 P.3d at 721.

¶ 22 Moreover, the district court protected Boyles's confrontation right to the greatest extent possible without infringing on Egan's Fifth Amendment right by allowing Boyles to introduce the arrest affidavits from the theft cases to prove the underlying facts. As Boyles's counsel acknowledged in the district court, that was the "next best thing" to cross-examination and allowed Boyles to challenge Egan's character for truthfulness based on those alleged facts.[3] Indeed, Boyles's counsel specifically referred to those affidavits in closing as evidence of Egan's "untruthful behavior."

¶ 23 Thus, the district court did not violate Boyles's right of confrontation or unreasonably limit his cross-examination of Egan.

---

[3] We note that CRE 608(b) does not allow specific instances of conduct to be proved by extrinsic evidence for the purpose of attacking a witness's character for truthfulness. *See People v. Thomas*, 2014 COA 64, ¶ 42. But the prosecution agreed to the admission of the arrest affidavits, and their admission — which benefited Boyles — is not at issue in this appeal.

### III. Sentence Proportionality

¶ 24     Boyles also argues that the district court erred by treating his predicate first degree trespass conviction as grave and serious for purposes of its proportionality review of his ninety-six-year habitual criminal sentence for second degree murder. Because we agree with the district court that Boyles's sentence does not raise an inference of gross disproportionality, we discern no reversible error.

### A. Additional Background

¶ 25     As noted above, Boyles was adjudicated a habitual criminal based on three prior felony convictions: a 2005 conviction for first degree trespass of a dwelling, a 2005 conviction for giving false information to a pawnbroker, and a 2010 conviction for aggravated robbery with a deadly weapon. The habitual criminal adjudication increased Boyles's second degree murder sentence from a range of sixteen to forty-eight years to a mandatory ninety-six years.

¶ 26     Boyles requested a proportionality review of his sentence. He conceded that the predicate aggravated robbery conviction and the triggering second degree murder conviction were grave and serious. But he argued that his other two predicate convictions were not.

¶ 27    The prosecution conceded that the conviction for false information to a pawnbroker was not grave and serious. But it argued that the first degree trespass conviction was. According to the arrest report, that offense — which occurred when Boyles was eighteen years old — involved Boyles's theft of items from a home.

¶ 28    The district court concluded that Boyles's sentence did not raise an inference of gross disproportionality. It agreed with the parties that aggravated robbery was a grave and serious offense and giving false information to a pawnbroker was not. With respect to the trespass conviction, the court explained:

> First degree criminal trespass can be a lot of things, including entering somebody's car to grab some change up to being on somebody's property illegally.
>
> Here, if we're talking about spectrum of seriousness in first degree criminal trespass cases, this is near the top. The facts behind this were a burglary of another person's home, which as far as property crimes go is about as serious as it gets. So I think under *People v. Green*[, 2012 COA 68M,] I can find, and I do find, that this is a grave and serious offense being in somebody else's home, stealing their things. And apparently the people were home at the time, and only became aware of the theft later.

> That does harm the victims of the crime,
> makes them feel unsafe in their home.  It was
> a completed act.  Mr. Boyles was the principal,
> and it would have required — I believe the
> mental state would be knowingly.  So this
> wasn't an accident.

¶ 29    The court then explained that the severity of the triggering murder offense was what "moves the needle past the required line." It noted that "there's no crime with a greater magnitude than murder."  It then pointed to several aggravating facts, including (1) the duration of the assault and murder; (2) the "savage way [the victim] was killed"; (3) the "somewhat celebratory scene once [the victim] was brought out onto the tier"; (4) the "indication of planning"; and (5) the disposal of the knife used in the murder.

¶ 30    Considering all three predicate offenses and the triggering offense together, the court concluded that Boyles's sentence was not grossly disproportionate "because somebody is dead."

### B.    Applicable Law and Standard of Review

¶ 31    Both the United States and Colorado Constitutions prohibit "grossly disproportionate" sentences.  *Wells-Yates v. People*, 2019 CO 90M, ¶¶ 5, 10 (*Wells-Yates I*).  When a defendant challenges the proportionality of a sentence, the court must conduct an

12

abbreviated proportionality review. *Id.* at ¶¶ 7, 11. In conducting that review, the court must consider the gravity or seriousness of the offense and the harshness of the penalty to determine whether the sentence gives rise to an inference of gross disproportionality. *Id.* at ¶¶ 7, 8, 11. If it does not, the sentence is valid, and an extended proportionality review is not required. *Id.* at ¶ 15.

¶ 32 For a habitual criminal sentence, the court must consider the gravity or seriousness of all the offenses in question and the harshness of the sentence to determine whether "the triggering offense and predicate offenses, considered together, are so lacking in gravity or seriousness as to suggest that the sentence is grossly disproportionate." *Id.* at ¶ 24. Although habitual criminal sentences present unique proportionality concerns, an abbreviated proportionality review will "almost always yield a finding that the sentence is not constitutionally disproportionate." *Id.* at ¶¶ 20, 21.

¶ 33 Gross disproportionality is a question of law that we review de novo, as are the subsidiary issues of the gravity or seriousness of the offense and the harshness of the penalty. *People v. Wells-Yates*, 2023 COA 120, ¶ 17 (*Wells-Yates II*). We defer to the district court's

factual findings concerning the facts and circumstances surrounding the offense if they are supported by the record. *Id.*

### C. Analysis

¶ 34 Boyles challenges only the district court's assessment of the seriousness of his first degree trespass offense. That question is not a binary choice between "serious" and "not serious." *Id.* at ¶ 36. Instead, we must consider *how* serious the offense is. *Id.* Treating this inquiry as one of degree, we agree with the district court that Boyles's first degree trespass — though surely not the most serious offense — was somewhat more serious than its label might suggest.

¶ 35 The district court found that the first degree trespass involved the burglary of another person's home. Boyles was knowingly "in somebody else's home, stealing their things" while the residents were home. As the district court pointed out, such a crime causes substantial harm to the victims by making them feel unsafe in their own home. *See id.* at ¶ 51 (noting that "even the burglary of an unoccupied home . . . causes substantial harm to the victim and reflects a high degree of culpability on the part of the offender"). Moreover, Boyles was the principal to the crime and the crime was completed, with the victims "only [becoming] aware of the theft

14

later." *See Wells-Yates I*, ¶ 12 (listing factors relevant to the gravity or seriousness of an offense). Taking into account these "facts and circumstances of the particular crime committed," *id.* at ¶ 71, we agree with the district court that Boyles's first degree trespass was more serious than other versions of that crime. *See Wells-Yates II*, ¶ 37 (considering "relative gravity or seriousness" of offense); *cf. Green*, ¶¶ 53-57 (concluding that first degree trespass was grave or serious where the defendant broke into the victim's home in the early morning hours, encountered the victim naked, and refused to leave, "caus[ing] the victim considerable fright and upset").

¶ 36 But regardless of the gravity or seriousness of the trespass offense, Boyles's ninety-six-year sentence does not raise an inference of gross disproportionality when the triggering offense and all three predicate offenses are considered together. *See Wells-Yates II*, ¶ 37; *see also People v. Loris*, 2018 COA 101, ¶ 29 ("It is not necessary for each offense to be grave or serious for a court to conclude that a sentence is not grossly disproportionate.").

¶ 37 Not only is murder the paradigmatic per se grave and serious offense, *see People v. Crawley*, 2024 COA 49, ¶ 22, but the murder in this case was particularly so. Boyles brutally beat the victim

unconscious before working with Merrill to hide the victim behind a sheet and repeatedly stab him to death. In addition, one of Boyles's predicate offenses — an aggravated robbery in which he cut the victim with a knife — was also per se grave or serious. *See Wells-Yates I*, ¶ 13. Even if Boyles's other two predicate offenses were not grave or serious, that would not make his sentence so extreme as to be grossly disproportionate to his crime. *See id.* at ¶ 5 ("'The Eighth Amendment does not require strict proportionality between crime and sentence'; instead, 'it forbids only extreme sentences that are "grossly disproportionate" to the crime.'") (citation omitted).

¶ 38 Boyles's age at the time of his predicate first degree trespass offense (he was eighteen years old) does not change our conclusion. Although Boyles's youth at the time of the trespass perhaps lessens his culpability for that offense, his sentence in this case was not imposed for the trespass. It was imposed for the murder. *See People v. Porter*, 2019 COA 73, ¶ 18. Boyles's age at the time of one of his predicate felonies does not affect the validity of his habitual criminal sentence under the Eighth Amendment. *See id.* at ¶ 19.

IV. Disposition

¶ 39 The judgment is affirmed.

16

JUDGE FREYRE and JUDGE SULLIVAN concur.